In the Matter of the Accounting of BROOKLYN TRUST COMPANY, as Trustee under the Will of EDWIN F. KNOWLTON, Deceased.

Surrogate's Court, Kings County, August 10, 1948.

*Cullen & Dykman* (*William K. Allison* of counsel) for trustee, petitioner.

*J. Vincent Keough, United States Attorney for the Eastern District of New York* (*John F. Sonnett, Harry LeRoy Jones, Albert Parker* and *Lillian C. Scott* of counsel), for Tom C. Clark, Attorney General of the United States, as successor to the Alien Property Custodian.

*Samuel Goldstein,* special guardian for Michael M. D. Francken-Sierstorpff, an infant.

McGAREY, S. The petitioner, trustee of one of the residuary trusts created by testator under his will, seeks judicial settlement of its final account and determination of the proper distribution of the corpus of the trust. The question presented is whether the child born of the second marriage of testator's grandson, the secondary life beneficiary of such trust, is entitled to a portion of the remainder as one of the " lawful issue " of such grandson. There is no substantial dispute on the facts, the differences between the parties arising as to the conclusions to be drawn therefrom and the principles of law to be applied.

Testator died in 1898 and by his will created two trusts, each of one half of his residuary estate, with different trustees of each trust, but in both of which the provisions for the distribution of income and principal are identical. The present proceeding concerns one of such trusts. The terms of the trust provide for the payment of the income thereof to testator's daughter, during her life, and on her death directs division of the corpus into as many equal shares as shall be the number of her children who shall survive her and those who shall have died leaving lawful issue, who shall survive her. Secondary trusts are created for the benefit of her surviving children and the issue of any child who may have predeceased her.

Testator's daughter had married and lived abroad until her death on July 16, 1929, leaving her surviving one child, a son, born prior to testator's death, and no issue of any predeceased child or children. Upon her death, therefore, he became entitled to all of the income of the one half of the residuary estate as secondary life beneficiary pursuant to the terms of the will. He had married in Germany and at the time of his mother's death had two children who are still living. A third child born of the marriage had died leaving no issue. At his mother's death, he lived with his wife and children in Germany. There is some proof that from 1933 to 1936 he was traveling in the United States, Africa and Switzerland and from 1936 to 1938 he was in Germany and in the latter year resided at Schellenburg, Lichtenstein.

Documentary proof submitted in the proceeding established that he entered this country as an immigrant in December, 1939. He left this country the following month and returned in May, 1940, registering at a hotel in New York City, and remained in this country thereafter until his death but only part of the time in this State. Shortly after this second arrival in this country he filed a form of intention to become a citizen of the United States and thereafter leased a small house in Cedarhurst, Long Island, New York. He traveled in the United States and spent considerable time at Sun Valley, Idaho, and in December, 1941, instituted an action for divorce in that State against his wife. The summons in the action was served upon her by publication pursuant to the order of the court and upon her default in appearance or answer, a decree of divorce was entered against her on January 27, 1942. Thereafter and on February 24, 1942, in the State of Florida, he entered into a ceremonial marriage with another woman. Of this second union a son, whose status as the lawful issue of testator is questioned

in this proceeding, was born on December 10, 1942, in the State of California, where concededly his father, testator's grandson, had been a resident from July 1, 1942, until the time of his death on December 5, 1944.

The Alien Property Custodian, acting under the authority of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 *et seq.*) and the Executive Order issued thereunder, vested by order the interests in this estate of the surviving children of his first marriage who were residents of Germany. The United States Attorney General has appeared herein for the Alien Property Custodian and contends the divorce obtained in Idaho by testator's grandson is invalid because he was not a bona fide resident of that State at the time but rather a resident of the State of New York, and consequently his second marriage was void and the child, whose status is here questioned, is not entitled to share as a remainderman of the trust as one of the lawful issue of testator. His right to challenge the validity of the divorce obtained in Idaho has been questioned and it is necessary for the court to determine whether his interests are such as to permit a collateral attack on the decree of a court of another State.

In *Matter of Lindgren* (181 Misc. 166, affd. 267 App. Div. 775, affd. 293 N. Y. 18) the question at issue was the right of decedent's child, the sole issue of his first marriage and claiming to be his sole distributee, to attack the validity of a decree of divorce awarded to the decedent against his first wife by a Florida court. The decedent had remarried after such divorce and his second wife, claiming to be his widow, sought letters of administration on his estate as against the general guardian of decedent's child. The Court of Appeals in sustaining the right of the general guardian on behalf of the child to question the validity of the Florida divorce said at page 23: " The petitioner attacks the validity of the Florida decree in behalf of the decedent's daughter — not in behalf of the decedent or of his estate or of the petitioner herself. By applying appropriate legal principles to the facts of record a choice must be made between the right, under section 118 of the Surrogate's Court Act, of the petitioner, as guardian of the decedent's only child, to administer his estate and the right, under the statute, of the appellant who claims to be his widow. In each instance we are dealing with matters personal to the claimant; not to the decedent or his estate. As to the child they are independent rights to which she claims to be legally entitled as the sole distributee of her father's

estate. Of course the child was not a party to the Florida divorce action and accordingly the judgment then entered was not conclusive upon her or upon the rights now asserted in her behalf. In these circumstances we think that as a third party she may challenge the validity of the Florida decree of 1939. (See *Olmsted. v. Olmsted,* 190 N. Y. 458, 466, 467, affd. 216 U. S. 386; *Andrews* v. *Andrews,* 188 U. S. 14, 39; *German Savings Society* v. *Dormitzer,* 192 U. S. 125, 128; *Milliken* v. *Meyer,* 311 U. S. 457; *Lefferts* v. *Lefferts,* 263 N. Y. 131, 134; *Matter of Holmes,* 291 N. Y. 261, 272, 273.)''

In *Senor* v. *Senor* (272 App. Div. 306, affd. 297 N. Y. 800) the Appellate Division, First Department, in discussing the question as to when a decree of divorce granted by a court of a foreign State may be collaterally attacked in actions or judicial proceedings in this State, said at page 312: '' Where persons having no complicity in the divorce proceedings have legitimate interests in a determination of the validity of the divorce, they may arouse the State's interest and institute an inquiry, which our courts will entertain, to ascertain the validity of a divorce decreed by a foreign State as to persons alleged to have been at the time residents of this State. (*Matter of Lindgren,* 293 N. Y. 18, *supra; Urquhart* v. *Urquhart,* 272 App. Div. 60.)''

The question here presented for solution does not involve the right of the child of testator's grandson by his second marriage to share in the estate of his father but rather his right to an interest in the estate of the testator herein, who died a resident of this county and State and whose will was duly probated here, as one of the '' lawful issue '' of testator. The determination of the parties entitled to share in the remainder of the trust created under testator's will is a vital concern of the State as the court must carry out the intention of the testator as expressed in his will. In construing his will to ascertain his intention in the use of the words '' lawful issue '', the court must necessarily apply the usual principles applicable in this State since the testator died resident here.

Neither the Alien Property Custodian nor the two children of testator's grandson whose interests herein he has vested, were parties to the divorce action in Idaho. They are vitally interested in the determination of the validity of the divorce decree since their rights under testator's will may be materially affected thereby. The court determines, therefore, that the Alien Property Custodian, deriving his interest from the two children of testator's grandson by his first marriage, may here question the validity of the Idaho divorce decree. (*Matter of Lindgren,*

181 Misc. 166, affd. 267 App. Div. 775, affd. 293 N. Y. 18, *supra;*
*Matter of Bingham,* 178 Misc. 801, affd. 265 App. Div. 463;
*Senor* v. *Senor, supra.*)

The public policy of this State is applicable in matrimonial
matters to marriages performed in this State; to marriages
where the marital domicile at the time of the foreign divorce
action was within this State; and where the defendant, at the
time of the institution of such action was either a domiciliary or
an actual resident of this State as distinguished from a transient.
Neither the defendant in the Idaho divorce action nor the issue
of her marriage with testator's grandson were at any time resi-
dents or domiciliaries of this State. At no time did testator's
grandson and his first wife, the defendant in the divorce action
live together in this State or maintain a marital domicile here.
Neither of them has a right to invoke the public policy of this
State for their personal benefit, although the court, in con-
struing the will of the testator, who died a resident of the State,
to determine his intention in the use of the words " lawful
issue " must necessarily determine the effect to be given the
divorce decree granted in Idaho.

The authority of a court to enter a decree dissolving a
marriage rests on jurisdiction of the subject matter as well as
of the parties requiring that at least one of the parties be a
domiciliary of the State granting the decree. (*Williams* v.
*North Carolina,* 325 U. S. 226; *Andrews* v. *Andrews,* 188 U. S.
14; *Matter of Lindgren, supra; Matter of Bingham, supra.*)
This court then must consider the question of the jurisdiction
of the Idaho court to grant the decree of divorce, which involves
the *bona fides* of the residence of testator's grandson in that
State (*Lefferts* v. *Lefferts,* 263 N. Y. 131).

A decree of divorce of a foreign State is entitled to full faith
and credit until it is established by competent evidence that
the foreign court lacked jurisdiction to make it. The burden
of proof to establish lack of jurisdiction in the foreign court
is upon the party who asserts it. (*Williams* v. *North Carolina,*
325 U. S. 226, *supra; Dalton* v. *Dalton,* 270 App. Div. 269.) The
decree of divorce obtained in the Idaho court appears on its
face to have been regularly obtained but this court may inquire
into all the facts and circumstances to ascertain whether testa-
tor's grandson was domiciled in Idaho at the time he obtained
the decree of divorce.

Testimony at the hearing established that under the laws of
Germany and Lichtenstein the husband had the right to select the
matrimonial domicile and the wife, under usual circumstances,

was obliged to follow the husband. Here the testator's grandson and his wife separated about 1933.

The details of the activities of testator's grandson in this country were adduced by testimony offered by both sides at the hearing. It establishes that on his arrival in this country in 1939 he registered at a hotel in Manhattan, New York City; that he was a guest from time to time until November 6, 1944, and for a great part of that time designated the hotel as his mailing address. For a part of that time, September 4, 1940, until May 3, 1941, he kept a room at the hotel on a monthly basis. He leased a small house at Cedarhurst, Long Island, which he referred to at times as a summer home, and on which his lease expired on June 30, 1942. The testimony of friends and a relative established that he never remained for any great length of time either at the hotel or the house on Long Island but that he traveled quite extensively. His address, registered with the trustee herein, was given as the hotel in Manhattan, although he directed communications to be addressed to him at other places from time to time and considerable correspondence with him during the latter part of 1940 and in 1941 was to and from Sun Valley, Idaho. Documentary evidence indicates that he was at the latter place a substantial part of 1941, and that on documents during that period when he was required to give his place of residence he designated the lodge at Sun Valley. However, in official Government documents and in correspondence with governmental agencies he described himself as a resident of New York, giving his permanent address as Cedarhurst, Long Island, and as late as April 10, 1942, in a letter to the Alien Registration Division of the Department of Justice, written from California, he stated that he was keeping his residence at Cedarhurst, Long Island.

On the foregoing facts the Attorney General contends that from the date of his re-entry in this country in May, 1940, until on or about July 1, 1942, testator's grandson was domiciled within the State of New York. The question is one of fact and the court must draw its conclusion from all the circumstances of the case. Residence is necessary to establish a domicile but it is not controlling unless there is the intention of making that place one of permanent abode and adopting it as the domicile. Change of residence from one place to another is strong evidence of an intention to change place of domicile but standing alone is insufficient and while a person may have two places of residence, he may have only one domicile. The intention of a person as to domicile must be determined on all the facts and declarations

as to intention must be considered with other facts. (*Matter of Newcomb,* 192 N. Y. 238; *Dupuy* v. *Wurtz,* 53 N. Y. 556; *Matter of Webber,* 187 Misc. 674; *Matter of Sorrentino,* 71 N. Y. S. 2d 451, affd. 272 App. Div. 919, affd. 297 N. Y. 696).

The court determines, in the light of controlling authority, that the evidence, oral and documentary, establishes that testator's grandson was not domiciled in this State at any time during the period he claimed to be domiciled in Idaho leading up to his action for divorce in that State, but that he was during that period a bona fide resident of Idaho. There is no testimony that he was physically present within the State of New York for any extended period at any time between May 3, 1941, the date on which he terminated his monthly rental of the room at the hotel and the date of his decree of divorce. On the contrary, documentary proof establishes that as early as March, 1941, and through that year he asserted he was a resident of Sun Valley, Idaho, and letters from him stated that he had abandoned his New York residence in October, 1941. In addition, he always asserted that the climate in the East was not beneficial for him and that he had intended making his permanent residence in the West, as a matter of choice and on the advice of his physician. The Attorney General, however, stresses the statements made by him in official documents and questionnaires that he was a resident of New York; that the lease of the Cedarhurst property did not expire until June 30, 1942, and that in a letter to the Department of Justice he stated his residence was in Cedarhurst, Long Island. His declarations to the Government agencies are understandable in view of his German background, the requirements of the Alien Registration Division and the fact that he had applied for citizenship. He wished to indicate that he had some fixed and continuing place of abode where he could be addressed at all times and, in fact, he declared that to be his intention in. giving a New York address for the Government records. However, in view of the actual facts his statements on such documents are not controlling and do not negative his physical presence and residence in Idaho. (*Matter of Trowbridge,* 266 N. Y. 283.)

The court determines that the decree of divorce entered in Idaho is entitled to full faith and credit in this State and must be given effect by this court. The law of Idaho provides that a divorce cannot be granted unless the plaintiff has been a resident of the State for six weeks next preceding the commencement of the action. The testimony establishes that testator's grandson

was domiciled and maintained a fixed and permanent residence in Idaho, at the time of the commencement of his action for divorce against his first wife in December, 1941, and for the statutory period preceding its institution. The statutory formalities of Idaho as to due process having been fully complied with it follows that his son by his second marriage is the lawful issue of the testator and entitled to share in the remainder of the trust.

One further question remains to be disposed of. Contention is advanced on behalf of the child of testator's grandson by his second marriage that even though the divorce obtained by his father was not recognized by this State, nevertheless, under the law of California where he was born and of which his father died a resident, he is the legitimate issue of such marriage. (Civ. Code of California, § 85; *Matter of Lund,* 26 Cal. 2d 472.) However, the question here is not the right of the child to inherit from his father but rather whether he is the lawful issue of testator. In discussing the question of the meaning of the words '' lawful issue '' as applied to the will of a testatrix, who died a resident of this State, the Court of Appeals, in *New York Life Ins. & Trust Co.* v. *Viele* (161 N. Y. 11), said at page 19: '' The meaning and intention of the testatrix in the use of the words ' lawful issue ' in her will must be ascertained by the application of the rules and principles sanctioned by the courts of this state in the construction and interpretation of wills. The will in question is not a foreign but a domestic will.''

Testator having died a resident of this State his will must be construed under and the disposition of his property is governed by the law of this State and unless such law gave the child, whose status is here questioned, the right to inherit as lawful issue of testator, the statute of California would be ineffective to confer such standing upon him. If, therefore, the divorce obtained by his father from his first wife were not recognized by this State, he would not come within the interpretation of the words '' lawful issue '' used in testator's will and would not be entitled to a share in this estate, even though he would be considered a legitimate child. (*New York Life Ins. & Trust Co.* v. *Viele, supra; Olmstead* v. *Olmstead,* 190 N. Y. 458; *Central Trust Co.* v. *Skillin,* 154 App. Div. 227; *Matter of Thomann,* 144 Misc. 497; *Matter of Bruington,* 160 Misc. 34; and see *Matter of Vincent,* 189 Misc. 489.)

Proceed accordingly.