ROBERT L. NILES, JR., and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustees under the Last Will and Testament of John Barron Niles, deceased,

*vs.*

LYNAM NILES, ISABELLE P. NILES, and PHILIP V. MANNING, Guardian of Julian B. Niles, Jr., a minor.

*New Castle, February 25, 1955.*

*Charles F. Richards,* of Richards, Layton & Finger, Wilmington, for plaintiffs.

*Thomas Cooch* and *Thomas S. Lodge,* of Connolly, Cooch & Bove, Wilmington, and *Joseph F. McCloy* and *Esther Glantz,* of McCloy & Glantz, New York City, for defendants Lynam Niles and Isabelle P. Niles.

*Harold Leshem* and *Albert J. Stiftel,* Wilmington, for Philip V. Manning, guardian of Julian B. Niles, Jr., a minor.

SEITZ, Chancellor: The ultimate question here is whether the minor defendant, Julian B. Niles, Jr., is the lawful issue of Julian B.

Niles so as to be entitled to take under the will of John Barron Niles, deceased.

The basic facts here relevant are not in dispute. John Barron Niles (hereafter called "testator") died domiciled in Delaware on December 15, 1933. His will, executed December 31, 1930, created a trust, appointed plaintiffs as co-trustees,[1] and provided for its distribution under various circumstances. The minor defendant, Julian B. Niles, Jr. ("minor") is the grandnephew of the testator. He is entitled to share in the trust income and corpus only if he is the "lawful issue" of Julian B. Niles ("Julian"), who was the testator's nephew. Since other beneficiaries under the will contended that the minor was not Julian's lawful issue and was not entitled to share, the co-trustee filed this complaint to have that matter determined in aid of a proper discharge of their duties.

Julian died in New York in 1946. He died testate as to some of his property and intestate as to the balance. Subsequently, his executor filed a proceeding in the New York Surrogate Court to have determined, in aid of his accounting, whether the minor was Julian's legitimate son. The other two defendants here were also parties to the Surrogate proceedings and unsuccessfully contested both the merits and the Surrogate's jurisdiction to decide the issue as there presented. In his opinion the Surrogate determined that the minor was Julian's legitimate son and directed that he was entitled to an interest as "issue" under his father's will and also to an interest in his father's intestate property. *In re Niles' Will, Sur.,* 99 *N.Y.S.2d* 238. It is unnecessary at this stage to pass upon the correctness of that decision. However, while it could have been appealed, it was not and the time for doing so has expired.

Subsequently, this action was brought by the plaintiffs to have this court determine whether the same minor is entitled to a share of the income and corpus of the trust being administered by them in this state. The matter is now before the court on a motion for summary judgment filed by the defendant, Philip V. Manning, guardian for the minor. The basic issue posed by the motion is whether the New

---

1. The third trustee died in 1942 and no successor was appointed.

York Surrogate's decision that Julian B. Niles, Jr., was the legitimate son of Julian B. Niles is binding in this proceeding.

The parties concede that we are not concerned with any doctrine of *res judicata* but solely with the doctrine of collateral estoppel because this is a different cause of action. The minor defendant says the other defendants are, by virtue of the judgment of the New York Surrogate Court, estopped to deny his legitimacy here. The other defendants contend that the New York judgment does not so operate because they say the doctrine does not apply to a matter incidentally determined in a court which would have had no jurisdiction to determine such issue in an action brought to determine it directly. As an adjunct, they say and the minor does not deny that there was no waiver of objection to that court's jurisdiction. They also contend that the New York Surrogate Court did not determine the fact in issue here because they say that a finding that a person is the legitimate child of his father is not tantamount to a finding that he is the lawful issue and descendant of his father's ancestors.

Generally speaking, collateral estoppel involves the same parties but a different claim or cause of action. It prevents only the relitigation of those matters actually determined in a previous suit, provided the determination was essential to the judgment. See 2 *Black, Judgments,* § 609.

Since it is an indispensable prerequisite to the application of the doctrine of collateral estoppel that the matter in question was actually determined, I shall first consider the contention of the other defendants that the New York Surrogate did not determine the matter in issue here.

Generally speaking, a will disposing of personal property is construed in accordance with the law of the testator's domicile. Since the testator, John Barron Niles, died domiciled in Delaware and since there is no suggestion that any other law was to be applicable, I conclude that his will must be construed in accordance with the Delaware law. See *Wilmington Trust Co. v. Wilmington Trust Co.,* 26 *Del.Ch.* 397, 24 *A.2d* 309, 139 *A.L.R.* 1117. It follows that the testator's intention in using the words "lawful issue" and "descend-

ants" must be construed in accordance with the Delaware law. Compare *In re Knowlton's Will*, 192 *Misc.* 1032, 81 *N.Y.S.2d* 752. I take it this means the Delaware law as it existed at the time the will was drawn and the time it was probated. Since the law was the same at both times there is no need to consider whether a distinction between the times might be important.

By his will the testator directed that under certain circumstances the principal and income was to be distributed to his nephew's "lawful issue" and "descendants". In seeking to find the intention behind the use of these words I assume I must determine whether under the facts the minor would have been regarded as lawful issue under the law the Delaware courts would apply. This requires some detailing of the admitted facts.

Julian married Patricia, the mother of the minor, in Wilmington, Delaware, on October 13, 1943. Both parties were apparently non-residents at the time. On April 29, 1944, Patricia instituted an annulment action in the New York Supreme Court on the ground that Julian was guilty of fraud in that he promised but later refused to go through a religious marriage ceremony and in that he promised but later refused to have children. On June 29, 1944, an interlocutory decree of annulment was granted her on the grounds alleged. The decree became final on September 30, 1944. On July 18, 1945, the minor was born to Patricia. Under New York law apparently any child conceived before the annulment becomes final is legitimate, at least where the ground for the annulment is fraud.

No attack is here made on the validity of the New York annulment. Yet it is solely because of the annulment that any question of the minor's legitimacy arises. Since the matter arose under the New York annulment statute it would seem that the Delaware court must also look to the New York statutory law to determine the scope (see *Du Pont v. Du Pont*, 8 *Terry* 231, 90 *A.2d* 468), and the consequences of such an annulment. Otherwise, we would be recognizing only part of the statutory consequences of New York's annulment law. This would make no sense here, Full Faith and Credit questions aside, because the parties were both under that court's jurisdiction and its action was not contrary to any public policy of this state.

██ Consequently, I conclude that under Delaware law this court in this situation will look to the whole New York statutory law governing the consequences of an annulment under its statute. See *Restatement, Conflict of Laws* § 141. When this is done it appears that the marriage subsequently annuled was lawful and valid in New York until declared void. *New York Domestic Relations Law, McK.Consol.Laws, c.* 14, § 7. A child begotten prior to a final decree of annulment is lawful issue. See *Heusner v. Heusner,* 181 *Misc.* 1015, 42 *N.Y.S.2d* 850. This was the test applied by the Surrogate. It follows that the issue tried and decided by the Surrogate was the same as this court will be called upon to decide if the doctrine of collateral estoppel is inapplicable and this court is required to retry the issue of the minor's legitimacy. There is therefore no merit to the contention of the other defendants that the same issue is not here presented as was passed upon by the Surrogate.

I next consider the contention of the other defendants that the collateral estoppel doctrine does not preclude a retrial of the legitimacy issue here.

██ The other defendants do not question the New York Surrogate Court's power and need to determine the legitimacy issue in the process of disposing of the matter admittedly within its jurisdiction. See *Raymond v. Davis' Estate,* 248 *N.Y.* 67, 161 *N.E.* 421; *In re Niles' Will,* above. But they do say that the New York Surrogate Court is a court of so-called limited jurisdiction and admittedly would not have had jurisdiction to determine the legitimacy issue in a direct action for that purpose. Consequently, they contend, in the words of the *Restatement of the Law of Judgments,* § 71:

> "Where a court has incidently determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly."

This so-called exception to the general rule on collateral estoppel is also the view of Professor Scott, one of the reporters for this restatement. See 56 *Harvard Law Review at page 22.* See also 147 *A.L.R.* 225.

In discharging their jurisdiction over certain actions, courts are frequently required to decide issues which they would have no jurisdiction to determine in an action brought expressly for that purpose. Where the same issue is raised in a direct proceeding the validity of the exception to the collateral estoppel rule has much merit. But where, as here, the same issue arises in a court which, like the first court to decide the issue, would have no jurisdiction to determine the matter in a proceeding for that purpose, the case for the application of the exception loses much of its appeal. The material I have read on the doctrine of collateral estoppel does not discuss the applicability of the exception in this situation. Indeed, it may be noted that § 71 of the *Restatement of Judgments* deals only with the situation where the matter is raised in an action subsequently brought to determine the matter directly.

It would not be amiss to consider the basis for the doctrine of collateral estoppel. It is a judicially created doctrine which has been recognized in this state. *Layton v. Hudson, 2 Boyce 573, 83 A. 134; Petrucci v. Landon, 9 Terry 491, 107 A.2d 236.* It is based on the worthy premise that the interests of the proper administration of justice are best served by limiting parties to one fair trial of an issue. In this day and age when the stresses and strains on our legal system are so great I can think of no more salutary approach. I say this with the qualification that the court must also be satisfied that the parties have truly had their "day in court" on the issue involved.

In situations where the same issue arises "collaterally" in the second trial, as here, I think the inquiry of the second court should be as follows: Was the first court possessed of the stature and processes which would warrant other fair-minded courts in concluding that the parties before the first court were afforded the opportunity to secure a full and fair presentation and determination of the issues posed. Compare 34 *Iowa Law Review, page* 111. Certainly if the answer is in the affirmative, the ends of justice are served by denying a retrial of the issue. Basically, such was the approach taken by the Third Circuit Court of Appeals in *United States v. Silliman, 167 F.2d 607,* certiorari denied 335 *U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379.* There the question of fraud had been determined by the New York Sur-

rogate in disposing of his jurisdiction over estates. The Surrogate would not have had jurisdiction over the claim in a direct proceeding. Subsequently, a direct action was brought in the Federal Court involving the same claim. One of the issues in the case was whether the Surrogate's decree constituted a collateral estoppel against relitigating the fraud issue. The Third Circuit Court adopted the following approach; it looked to the powers and the stature of the particular court which first decided the matter (New York· Surrogate Court) and concluded that they were such that the determinations of a tribunal granted such powers should be made binding on the parties in a subsequent suit raising the issue directly.· See also *Whitman Co. v. Universal Oil Products Co., D.C., 92 F.Supp.* 885. Once this court is satisfied concerning the first court, then this same approach should be at least equally acceptable where the same issue is once again raised collaterally. Nothing in the reasoning which underlies the exception incorporated in § 71 of the *Restatement of Judgments* compels the extension of the exception to a case where the issue is raised collaterally in a later case and the court is satisfied to the extent above stated.

█ I agree with the analysis made by the court in the *Silliman* case of the several cases and situations where the court should not invoke a collateral estoppel because of the type of court or type of jurisdiction involved in the first action, e. g., *Loomis v. Loomis,* 288 *N.Y.* 222, 42 *N.E.2d* 495, 147 *A.L.R.* 183. But as that court pointed out, and as the Second Circuit Court has also recognized,[2] the New York Surrogate Court is a court of very broad powers. It is provided for in the state constitution and its statutory powers have been constantly enlarged so that its jurisdiction is now so broad as to entitle its determinations to the dignity which should surround the judgments of courts whose determinations are accorded extra-state recognition. Moreover, its decisions may be appealed. Compare *Raymond v. Davis' Estate,* 248 *N.Y.* 67, 161 *N.E.* 421.

To loosely paraphrase the court in the *Silliman* case, it also seems to me inaccurate to designate the Surrogate's finding of legitimacy to have been "incidental", if by that word it is intended to mean that

2. *Griffith v. Bank of New York,* 147 *F.2d* 899, 160 *A.L.R.* 1340.

the determination is to be accorded no validity beyond the case actually before him. The issue had to be decided by that court in the discharge of its jurisdiction. It was decided in the state where the parties involved were domiciled and in a case where its own law controlled. It was decided only after a full trial on the issue before a constitutional court with broad powers. Where the same issue arises collaterally again in another case, what principles of justice or public policy call for a retrial? None, in my opinion.

■■■ I therefore conclude that the determination of the issue of legitimacy by the New York Surrogate Court, under the facts presented, justifies the application of the doctrine of collateral estoppel in favor of the minor in this proceeding. It follows that the guardian's motion for summary judgment on the issue of legitimacy should be granted.

It is unnecessary to decide whether the Full Faith and Credit Clause would compel the same result. Compare *United States v. Silliman, above.*

Order on notice.