ELIAS AUERBACH,
Plaintiff,

and

C. PERRY KING,
Plaintiff-Intervenor,

*vs.*

CITIES SERVICE COMPANY, and ARKANSAS FUEL OIL CORPORATION,
Defendants.

*New Castle, March 8, 1957.*

*Russell J. Willard, Jr., Wilmington,* for plaintiff.

*Percival E. Jackson,* New York City, and *Richard F. Corroon,* Wilmington, for plaintiff-intervenor.

*Joseph L. Weiner,* New York City, and *Eugene R. Sullivan,* of Frueauff, Farrell, Shanley & Johnsen, New York City, and *Henry M. Canby,* Wilmington, for defendant, Cities Service Co.

*Howard L. Williams,* Wilmington, for defendant, Arkansas Fuel Oil Corp.

MARVEL, Vice Chancellor: Plantiff,[1] who claims to have been a stockholder since 1945 of what is now Arkansas Fuel Oil Corporation, complains that at various times since 1945 Cities Service Company

---

1. C. Perry King, having been granted leave to intervene as a party plaintiff, adopted plaintiff's complaint. He claims to have been an Arkansas stockholder since March, 1947.

has dominated its subsidiary, Arkansas Fuel Oil Corporation,[2] to the latter's financial detriment. Plaintiff sues derivatively and prays for an order directing Cities to account to Arkansas for moneys allegedly gained at the latter's expense. The claims of the complaint are not divided into separate counts as required by Rule 10(b), *Del.C.Ann.*, however, the complaint charges in substance that Cities improperly caused Arkansas to do the following, (1) to shut down its own refinery in 1945 and thereafter to sell its crude oil production to Cities and to buy refined products from Cities under an unfair pricing system, (2) to lease a large terminal at Fort Lauderdale, Florida from a subsidiary of Cities, (3) to market automobile tires and tubes bearing Cities' name, (4) to arrange for transportation facilities for its products from subsidiaries of Cities, (5) to participate in research, the results of which benefited Cities, and (6) to pay a substantial part of Cities' advertising expenses.

Cities Service contends that none of these claims other than the first specifically alleges any damages caused Arkansas as a result of Cities' claimed domination and that all claims other than (2) and (4), were disposed of after hearings conducted under provisions of the Public Utility Holding Company Act of 1935.[3] These hearings ultimately led to the filing of a reorganization plan for the Cities System which was approved by the S.E.C. and enforced by order of the United States District Court for the District of Delaware. On appeal by a group of stockholders, the order below was affirmed and certiorari was denied.

Cities' answer in effect admits that a major part of the crude oil produced by Arkansas since 1945 has been sold to a refinery owned by Cities, that Arkansas since 1945 has purchased refined petroleum products from Cities and attaches as exhibits copies of the contracts between the parties defendant covering these transactions. The

2. Cities admittedly owned 51.5% of the stock of its subsidiary, Arkansas Natural Gas Corporation, prior to reorganization proceedings hereinafter referred to. After the reorganization Cities Service continued to hold the same percentage of stock in the present defendant as it had held in Arkansas Natural Gas Corporation.

3. *Title* 15 *U.S.C.A.* § 79 *et seq.*

answer denies that Cities imposed an unfair pricing system on Arkansas but admits that six out of eleven Arkansas directors were selected by Cities upon merger of Arkansas Fuel Oil Company into Arkansas Natural Gas Corporation[4] in April, 1953 and that as of now four of the directors of the latter corporation are directors of Cities. Any injury to Arkansas as a result of such management arrangement is denied. Arkansas Fuel Oil Corporation has filed an answer which admits S.E.C. approval of the amended plan for reorganization of the Cities System, attaches copies of its contractual arrangements with Cities and prays for dismissal of the complaint.

By way of separate defense, Cities, as indicated above, has pleaded a reorganization of its system conducted by the Securities and Exchange Commission and in separate paragraphs Cities' answer sets up the defenses of compromise and settlement, *res judicata,* and collateral estoppel, all of which are based on the results of the S.E.C. proceeding. As a fourth separate defense Cities has pleaded the Delaware three year statute of limitations, 10 *Del.C.* § 8106.

Having filed the record of the reorganization proceedings before the S.E.C., Cities has preliminarily moved for summary judgment on the grounds that the papers before me, including intervenor's affidavit in opposition to Cities' motion, present no genuine issue as to any material fact and that Cities Service Company is entitled to judgment as a matter of law. Arkansas Fuel Oil Corporation joins in such motion.

Plaintiff and intervenor contend that Cities' defenses based on the reorganization proceeding are without merit for the following reasons, (1) that the present action "* * * is not identical with the subject of and the causes of action involved in the prior S.E.C. proceeding, and in consequence the rules of res adjudicata have no application * * *," (2) that the "* * * causes of action in the instant complaint were neither litigated nor determined in the prior S.E.C. proceeding, and in consequence, the rules of collateral estoppel have no application * * *", and (3) that "* * * the allegations of the complaint include

---

4. At the time of the merger in April, 1953 following the S. E. C. proceeding, the name of the resulting corporation was changed to Arkansas Fuel Oil Corporation.

wrongs complained of which occurred subsequent to the rendition of the orders in the prior proceeding and for that reason alone are not barred."

Inasmuch as Cities Service Company was a public utility holding company (as defined by the Public Utility Holding Company Act), it registered as such with the Securities and Exchange Commission in 1941. At that time one of its subsidiaries was Arkansas Natural Gas Corporation also a public utility holding company with two principal subsidiaries, Arkansas Louisiana Gas Company and Arkansas Fuel Oil Company.

The S.E.C., having directed Arkansas Natural Gas Corporation to separate its oil business from its public utility business, thereafter instituted proceedings against the Cities System on February 9, 1949 under various provisions of the Public Utility Holding Company Act. The Commission's 1949 notice and order, after reciting fifteen allegations of claimed inequities in the Cities System's capital structure and allocation of voting rights, stated that in the light of the specific allegations "* * * it is appropriate in the public interest and in the interest of investors and consumers to institute proceedings with respect to Arkansas-Natural and its subsidiaries and Cities * * * in order to determine the relevant facts as to the organization and history of Arkansas-Natural and the relation of Cities thereto and to determine what steps, if any, should be taken by such companies * * *" pursuant to the Act. The order then went on to consolidate proceedings against the various corporations in the Cities System. The basic issues to be decided were declared to be those presented in the fifteen allegations set forth in the order, however, the scope of the issues presented in the proceeding was specifically not limited and the order directed that it would be determined at a hearing to be fixed by subsequent order "* * * whether there are any other facts or circumstances in connection with the organization and history of Arkansas-Natural and the relations of Cities thereto which are relevant to a determination of what action, if any, is required under Section 11(b) of the Act * * *" and whether the corporate structures, accounting systems and voting rights of stockholders in the Cities System were so inequitably arranged as to require revision.

Cities and Arkansas answered the allegations of the order denying any improper inter-corporate dealings or relationship, and Cities asked that the proceeding be dismissed. Cities in its answer also acknowledged its awareness of the fact that criticism had been voiced about the absence of voting power in the Class A stock of Arkansas-Natural and offered to vote its stock to remedy this situation.

On January 25, 1951, prior to any hearings, Arkansas filed a reorganization plan as permitted by § 11(e) of the Act. On January 31, 1951 the Commission issued a new order for a hearing on such plan, listing nine questions to be considered including "* * * 4. Whether facts or circumstances exist which would support the assertion by Arkansas-Natural of claims against Cities or against any other stockholder or group of stockholders of Arkansas-Natural."

The parties then went into a protracted hearing during the course of which Cities came to the conclusion that it would be in its own interest to submit an amended plan and did so. On December 18, 1951, the S.E.C. issued a notice setting a hearing on the new plan including Cities' proposal therein that, "In full settlement and compromise of all claims that have been or may be raised or asserted in these proceedings against Cities and its subsidiaries, Cities will make cash payments aggregating approximately $4,000,000 to the public holders (with certain exceptions as to interested stockholders) of Arkansas Natural's Class A and Common stocks, on the basis of $1.50 per share of class A stock and 25 cents per share of Common stock." The notice and order provided *inter alia* that copies of it should be mailed to each of Arkansas Natural's security holders at least fifteen days prior to the proposed hearing and set forth Cities' statement that it was making a proposal of settlement "* * * as a means of effectuating a settlement and complete discharge of the claims, without admitting that such claims have any substantial foundation * * *"

On October 1, 1952, the Commission filed its findings and opinion which recited Cities' intention of effecting "* * * full settlement of all claims that have been or may be asserted against Cities and its subsidiaries in these proceedings * * *" by payments of $4,069,268.75 by Cities to the public holders of Arkansas Natural on the basis of the terms set forth in the December 18, 1951 notice. The Commission

concluded that the plan was "* * * necessary and fair and equitable to the persons affected by it * * *" and stated that an order approving it would be entered.

While the preamble to the S.E.C. order approving the amended plan referred to such plan as "* * * providing, among other things, for the simplification of Arknat's corporate structure, the separation of Arknat's utility from its non-utility interests, its merger with its oil subsidiary, and the settlement of claims *asserted* against Cities and its subsidiaries * * *", the order itself recited that public hearings had been held after notice "* * * at which hearings all interested persons were afforded an opportunity to be heard * * *", and the S.E.C. transcript of proceedings in the case discloses that the opportunity so afforded was utilized.

■ While the provisions of § 11(b) of the Public Utility Holding Act permit the Commission to revoke and modify its orders, "* * * if, after notice and opportunity for hearing, it finds that the conditions upon which the order was predicated do not exist * * *", the plan here involved remains in force and effect as approved on October 1, 1952. In my opinion nothing short of an overall settlement of all existing claims attributable to Cities' control of Arkansas, including those for damages allegedly caused Arkansas' public stockholders as a result of such control, was intended to be consummated in the amended plan. This conclusion is borne out by the fact that the enforcement opinion filed by Judge Maris in the United States District Court for the District of Delaware on January 10, 1953, after a hearing on notice, described the plan as one designed to pay Arkansas Natural's public stockholders some $4,000,000 "* * * in full settlement of all claims *asserted or assertable* against Cities, on behalf of Arkansas and its security holders as such." *In re Arkansas Natural Gas Corp., D.C.Del.* 109 *F.Supp.* 522, 523.

■ I attach no significance to the fact that the enforcement order arose out of approval of an amended plan of reorganization filed by Cities Service Company inasmuch as it is well established that claims in S.E.C. proceedings may be disposed of by settlement rather than by litigation. *In re Midland United Co., D.C.Del.* 58 *F.Supp.* 667, *Ladd v. Brickley,* 1 *Cir.* 158 *F.2d* 212, and that a proper settlement

may grow out of an offer by the parent corporation rather than through negotiations between the parent and public security holders, *In re Illinois Power Co., D.C.Del.* 74 *F.Supp.* 317, *affirmed sub nomine, In re North American Light and Power Co.,* 3 *Cir.* 170 *F.2d* 924.

The Commission in approving the amended plan (Ex. E to Cities' motion for summary judgment) pointed out that in considering claims asserted against Cities, the Commission "* * * was not called upon to adjudicate the merits of or to assign a specific monetary value to each particular claim * * *" and that the claims against Cities "* * * must be tested in the light of standards of conduct applied to a controlling stockholder who occupies a fiduciary relationship to that corporation and its public stockholders * * *"

On the record before me I find that the acts of corporate over-reaching complained of here, which have their alleged origin in defendants' intercorporate dealings and relationships as they existed prior to approval of the amended plan, were brought to the attention [5] of the Commission and were put to rest insofar as this Court is concerned by entry of the enforcement order on the Commission's conclusion that "* * * the plan is necessary and fair and equitable to the persons affected by it * * *" Insofar as plaintiff and intervenor seek modification of the amended plan they must look to the S.E.C. and not to this Court.

Plaintiff and intervenor insist, however, that the causes of action herein pleaded differ from the causes of action in the S.E.C. proceeding and that the principle of estoppel (which is the basis for my refusal to hear evidence on those matters here complained of which have their origin in events occurring before the effective date of the Commission's order) can operate only as to matters actually litigated in a prior proceeding and not as to what might have been litigated and determined, *Cromwell v. Sac,* 94 *U.S.* 351, 24 *L.Ed.* 195. It is vigorously contended that the claims here asserted were not specifically adjudicated in the S.E.C. order of October 1, 1952, and that

5. See for example questioning by counsel for public stockholders in Official Report of Proceedings Before The Securities and Exchange Commission, Docket No. 59-93, *pp. 1782, 3232-3233.*

the facts pleaded in this derivative action were not taken into consideration in the findings and opinion and order of approval filed by the S.E.C.

It has been stated that a decree based on the provisions of § 11 and § 24 of the Public Utility Holding Act of 1935, Title 15 *U.S.C.A.* §§ 79k(e), 79(r) and 79x(a) is immune from collateral attack and that such a decree is *sui generis, Nichols v. Alker, 2 Cir.* 231 *F.2d* 68, and it was specifically held in the cited case that a tort action seeking to bypass the Commission and the enforcement court violates the injunction provisions of a reorganization decree. However, the basis for my refusal to hear plaintiff's and intervenor's claims, other than those set forth in paragraphs 10 and 12 of the complaint, is, as I have indicated, the doctrine of collateral estoppel, *Niles v. Niles, 35 Del.Ch.* 106, 111 *A.2d* 697. It is readily apparent that plaintiff-intervenor, who to all intents and purposes controls this action against Cities, participated in all phases of the reorganization proceeding which resulted in enforcement of the amended plan. After participating fully in proceedings instituted in a tribunal designed by Congress for the purpose among others of protecting the interests of public stockholders, intervenor is estopped [6] from attempting to obtain further relief for himself and other Arkansas stockholders under the guise of this action in a court of equity. As to plaintiff, ample opportunity was afforded him to participate in the proceedings before the S.E.C., and his interests there were fully represented. His rights in the pre-reorganization claims of the complaint are also controlled by the plan and its enforcement order. There being no genuine dispute as to any material fact in the papers before me, summary judgment will be entered for defendants as to all causes of action other than those pleaded in paragraphs 10 and 12 of the complaint.

While paragraphs 10 and 12 of the complaint do not allege when Cities required Arkansas to lease a terminal and to obtain transportation facilities from a Cities' subsidiary, it is conceded that the matters complained of in such paragraphs originated after the effective date of the reorganization plan. As to these causes of action the motion for summary judgment is denied.

6. See comments in 70 *Harvard Law Review p.* 562 on *Nichols v. Alker, supra,* and allied litigation.