THE CHASE MANHATTAN BANK, a banking corporation of the State of New York,
Plaintiff,

*vs.*

PATTERSON-EMERSON-COMSTOCK OVERSEAS, INC., a corporation of the State of Delaware,
Defendant,

THOMAS H. EMERSON,
Intervening Defendant.

*New Castle, October 16, 1964.*

*John P. Sinclair*, of Berl, Potter & Anderson, Wilmington, and *Milbank, Tweed, Hadley & McCloy*, New York City, for plaintiff.

*Clyde M. England, Jr.*, of Killoran & Van Brunt, Wilmington, for defendant Patterson-Emerson-Comstock Overseas, Inc.

*Howard L. Williams*, of Morris, James, Hitchens & Williams, Wilmington, for intervening defendant Thomas H. Emerson.

MARVEL, Vice Chancellor. The complaint herein alleges that as a result of a purchase made at a public sale held on June 28, 1963 plaintiff became the owner of forty shares of the corporate defendant's fifty dollar par value stock originally issued to Thomas H. Emerson on February 18, 1957. Plaintiff also contends that on July 11, 1963 it tendered to the corporate defendant the stock certificate acquired as a result of such purchase accompanied by a stock power signed by Thomas H. Emerson with the request that a new certificate be issued in the name of plaintiff's nominee. Defendant having refused to honor such request, plaintiff instituted this suit, concluding its complaint with a prayer that the corporate defendant be ordered to issue a new certificate to plaintiff's nominee and that damages be awarded for the corporate defendant's refusal to comply with plaintiff's request. Thomas H. Emerson, the registered holder of the certificate in controversy, was thereafter granted leave to intervene in this proceeding and has filed an answer to the effect that the basic debt hereinafter described, for the better securing of which he had pledged forty shares of stock of the corporate defendant, has been paid in full prior to the purported sale of such stock to plaintiff. Issue having been joined on the question of whether or not plaintiff is entitled to the relief prayed for, this is the opinion of the Court on plaintiff's motion for summary judgment. Such motion is based on extracts of proceedings in the United States District Court for the Southern District of New York in which an application of Emerson-Garden was decided adversely to such corporation, papers having to do with Thomas H. Emerson's guaranty of Emerson-Garden's debt to plaintiff, affidavits, and communications between the parties.

This controversy has its origin in action taken by the defendant Thomas H. Emerson to guarantee the payment of loans made by plaintiff to a corporation known as Emerson-Garden Electric Co., Inc., a

New York corporation, all of the stock of which was owned by Mr. Emerson. Such guaranty was executed by Mr. Emerson on June 16, 1960. On January 30, 1961, he took the further action of pledging the forty shares of the corporate defendant here in controversy as security for such guaranty. On October 11, 1961, Emerson-Garden filed a petition for a Chapter XI arrangement in bankruptcy in the United States District Court for the Southern District Court of New York, on which date, according to plaintiff, Emerson-Garden owed plaintiff a balance on loans of $632,463. Plaintiff, having thereafter gained court approval of its offer to purchase the pledged stock of Patterson-Emerson-Comstock, Inc. owned by Emerson-Garden, for the sum of $400,000, such transaction was ordered consummated by order of the referee dated January 9, 1962.

On May 27, 1963, plaintiff addressed a letter to Mr. Emerson, drawing his attention to his personal commitment in connection with loans made by plaintiff to Emerson-Garden. Such letter demanded that Thomas H. Emerson honor his contract of guaranty, stating that if payment were not made thereon on or before June 10, 1963, the stock pledged by him would be sold and the proceeds applied against moneys owed plaintiff in the claimed amount of $221,838 plus interest. By letter of June 10, 1963, Mr. Emerson informed plaintiff that it had in fact been overpaid for its loans to Emerson-Garden and demanded the return of his pledged stock and an accounting. Such demand was refused, and the stock in question was advertised for disposal to the highest bidder at a sale fixed for June 28, 1963.

On June 12, 1963, Emerson-Garden Electric Co., Inc. by Thomas H. Emerson, its president, petitioned the United States District Court for a rule against Chase Manhattan requiring it to account for all moneys received on its claim against the debtor and directing such bank to show cause why its proposed sale of the pledged stock should not be stayed. On June 13, a rule together with a temporary stay against sale of the pledged stock issued, and Chase Manhattan answered to the effect that after extended hearings in 1961 the referee in bankruptcy in charge of the arrangement proceedings for Emerson-Garden had determined that after the sale of property of the debtor, the debt of such corporation to plaintiff has been reduced to the sum of $232,463 "* * * without prejudice to the ultimate determination of said claim and

providing further that in the event the lien of the pledge is ruled invalid, Chase shall pay to the estate the sum of $400,000 * * *". By way of affirmative defense Chase Manhattan also averred that in any event the District Court lacked jurisdiction under the Bankruptcy Act to enjoin it from seeking to enforce its rights in property pledged to it by a guarantor and asked that the debtor's petition be dismissed and the temporary stay vacated. The referee proceeded to take evidence on the accounting phase of the debtor's petition, agreed that he had no jurisdiction to enjoin the sale of the pledged stock, and his June 28, 1963 order denying the debtor's application and vacating his June 13 stay was affirmed by the District Court on appeal.

Plaintiff contends that the United States District Court for the Southern District of New York having determined that the debt of Emerson-Garden to plaintiff had not been paid at the time Mr. Emerson's pledged shares were sold, such determination is binding on Mr. Emerson inasmuch as, according to plaintiff, he was in fact behind the abortive efforts of Emerson-Garden to enjoin the sale of his pledged stock, *Souffront v. La Compagnie des Sucreries*, 217 *U.S.* 475, 30 *S.Ct.* 608, 54 *L.Ed.* 846 and *Auerbach v. Cities Service Co.*, 36 *Del.Ch.* 333, 129 *A.2d* 774. This basic contention of plaintiff's, upon which its argument that Mr. Emerson is bound by an earlier judgment through an extension of the doctrine of collateral estoppel or res adjudicata must depend, is, of course, that the New York court made a final and binding determination that the debt owed by Emerson-Garden to plaintiff remained outstanding in part prior to the sale of the pledged stock here in issue. Thus, as plaintiff points out, on page 86 of the transcript of proceedings before the referee on June 26 and 27, 1963, the referee is reported as stating in his oral opinion: "* * * The evidence does not warrant a finding that the bank has been paid * * *". However, on page 61 of the same transcript the referee, in overruling an objection to a question propounded to plaintiff's witness by the debtor's attorney, commented "* * * I consider this an examination before trial * * *", a view the referee reiterated on page 76. Again, in his oral opinion on page 85, the referee stated: "* * * The debtor is entitled to employ pre-trial proceedings to learn whether, as its application alleges, the bank has been paid * * *".

The point would seem to be that, while aware of the fact that he was without jurisdiction to deal with contentions concerning transactions between the owner of the pledged stock in question and Chase Manhattan in a bankruptcy proceeding, In re *Nine North Church Street* (CA 2), 82 *F.2d* 186, the referee was reluctant to permit a guarantor's property to be sold towards satisfaction of a debt which perhaps no longer existed. And while the District Court, in affirming the order of the referee, stated,

> "A reading of the minutes of the hearing convinces this Court that the facts developed clearly support the conclusion of the referee that the debt owed by debtor to Chase Manhattan has not been extinguished * * *",

I can not agree, at least on the basis of the papers on which plaintiff now relies, that a full accounting on the issue of whether or not the underlying debt of the debtor corporation had in fact been paid was afforded. In other words, apart from the difficult question as to whether or not intervenor, though obviously not a party, In re *Nine North Church Street, Inc.*, supra, can be said to have vicariously participated in the proceedings brought on by the debtor's motion for an accounting and a stay in the New York proceedings, I am not satisfied that a full opportunity to litigate the accounting aspect of debtor's motion was furnished in the summary federal proceeding on which plaintiff relies to sustain its motion. On the other hand, as I read the papers before me, the sale of the pledged stock of Thomas H. Emerson would have been unwarranted had it been clearly demonstrated at the June 1963 hearing that nothing was due and owing from the debtor to the present plaintiff, there being no doubt but that such party fully participated in such proceedings. However, inasmuch as it was not established at such hearing that the debt had in fact been extinguished, the referee properly refused to permit interference by injunction with the right of plaintiff to proceed against the obligation of the guarantor, 11 *U.S.C.* § 34.

Plaintiff's motion for summary judgment is denied and an order to such effect may be presented on notice.