## SOUFFRONT, WIDOW OF FLEURIAN, v. LA COMPAGNIE DES SUCRERIES DE PORTO RICO.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 155.   Argued April 15, 1910.—Decided May 16, 1910.

Where the vendors bring an action in their own name but to protect their vendees, such vendees, although having acquired title prior to the institution of the action are privies thereto and may plead the judgment in such action as *res judicata;* in such a case the general rule that no one whose interest was acquired prior to the institution of the action is privy to the judgment rendered therein does not apply.

Under Spanish law it was competent for vendors after parting with title to conduct a litigation in their own names for the benefit of their vendees, and therefore a judgment in such a case inures to the benefit of the vendees as between them and the defendants against whom it was rendered and their respective privies.

One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record. *Lovejoy v. Murray,* 3 Wall. 1.

Assertions that parties are not privies to a judgment and cannot plead it as *res judicata* and that a judgment can be collaterally attacked as rendered against one insane at the time, raise questions of law, and where, as in this case, such questions are to be determined on the facts appearing in such judgments and in the pleadings the court does not usurp the functions of the jury by determining that the contentions raised by such assertions are without merit.

THE facts are stated in the opinion.

*Mr. Hannis Taylor,* with whom *Mr. Charles M. Boerman* was on the brief, for plaintiffs in error:

Those who acquire a title before any suit brought by the

vendors or former owners are not to be considered as privies to such suit or a judgment thereon. Freeman on Judgments, 1st ed., § 162; *Dull* v. *Blackman*, 169 U. S. 248; *Kerr* v. *Watts*, 6 Wheat. 560; *Canon River Mfg. Assn.* v. *Rogers*, 43 N. W. Rep. 792; *Sessions* v. *Johnson*, 95 U. S. 347; *Graham* v. *La Crosse M. R. Company*, 3 Wall. 704.

A party not concluded or bound by a judgment cannot invoke such judgment as estoppel against others. *Keokuk Railroad* v. *Scotland County*, 152 U. S. 326; *Bedon* v. *Devie*, 144 U. S. 143.

The judgment of a foreign court, and especially a French court, upon the rights or title to real estate, situated in this country, has not the effect of *res judicata*. *Dull* v. *Blackman*, 169 U. S. 246; *Carpenter* v. *Strange*, 141 U. S. 105. The court has no inherent power, by the mere force of its decree, to annul a deed, or to establish a title. *Hart* v. *Sansom*, 110 U. S. 151, 155; *Massie* v. *Watts*, 6 Cranch, 148, citing Story, Confl. Laws, § 54° Whart., Confl. Laws, §§ 228, 289; *Watkins* v. *Holman*, 16 P. t. 25; *Northern Indiana Railroad* v. *Mich. Cent. Railroad*, 15 Iow. 233; *Davis* v. *Headly*, 22 N. J. Eq. (7 C. E. Green) 115; *Miller* v. *Birdsong*, 7 Baxter, 531; *Cooley* v. *Scarlett*, 38 Illinois, 316; *Gardner* v. *Ogden*, 22 N. Y. 327.

A decree in equity rendered upon a demurrer to the bill without considering the merits of the case has not the effect of *res judicata*. *Walden* v. *Bodley*, 14 Pet. 156; 1 Greenleaf's Ev., §§ 529, 530, and authorities there cited; *Hickey* v. *Stewart*, 3 How. 758; *Smith* v. *Sherwood*, 4 Connecticut, 276; *Stevens* v. *Hughes*, 31 Pa. St. 381; and see Freeman on Judgments, § 270.

As the action in the case at bar is in the nature of the trial of the title it is not barred even by a former judgment in ejectment. *Mallet* v. *Foxcroft*, 1 Story, 477; *Foxcroft* v. *Mallet*, 4 How. 378; *Strother* v. *Lucas*, 12 Pet. 434; *Merryman* v. *Bourne*, 9 Wall. 599.

A United States court in an action at law cannot render judgment without a jury upon the pleadings, where the facts alleged by one party are controverted by the other party.

Amendment VII to the Constitution of the United States; *United States* v. *La Vengeance,* 3 Dall. 297; *Bank of Columbia* v. *Oakly,* 4 Wheat. 235; *Edwards* v. *Elliot et al.,* 21 Wall. 532.

This article of the Constitution is in force in all the organized Territories of the United States. *Cannon* v. *Gilmer,* 131 U. S. 28; *Tompson* v. *Utah,* 170 U. S. 346.

Section 34 of the act temporarily to provide revenues and a civil government for Porto Rico, of April 12, 1900, provides, that the United States District Court for Porto Rico shall proceed in the same manner as a Circuit Court.

The single question which this court need consider is whether the District Court erred in substituting itself for the jury, and in passing upon the contested issues of fact presented by the replication, without a waiver of the right of trial by jury by consent of parties. The trial of issues of fact in civil cases by the courts of the United States without the intervention of a jury, can be had only when the parties waive their right to a jury by a stipulation in writing. *Baylis* v. *Travelers' Ins. Co.,* 113 U. S. 316; *Elmore* v. *Grymes,* 1 Pet. 469; *D'Wolf* v. *Rabaud,* 1 Pet. 476; *Castle* v. *Ballard,* 23 How. 172; *Hodges* v. *Easton,* 106 U. S. 408; *Idaho Land Co.* v. *Bradbury,* 132 U. S. 515; *Morgan* v. *Gay,* 19 Wall. 81; *Royal Ins. Co.* v. *Martin,* 192 U. S. 149. Trial by jury is a part of the machinery of the District Court of the United States in Porto Rico.

*Mr. Charles Hartzell,* with whom *Mr. Manuel Rodriguez-Serra* was on the brief, for defendants in error.

MR. JUSTICE WHITE delivered the opinion of the court.

In July, 1906, plaintiffs in error commenced this action in the District Court of the United States for the District of Porto Rico, to recover, from the defendants in error, the possession of certain described real estate and damages from April 12, 1904, for unlawfully withholding possession thereof.

The right to the relief sought was based upon the averment that one Clemente de Fleurian, at his death, on February 24, 1892, was seized in fee and entitled to the possession of the premises, and that he died intestate, leaving the plaintiffs—his widow and two children—"as his legal succession." A demurrer to the complaint was overruled, except as to the necessity of furnishing certain information in regard to rents and profits, which was afterwards done through the medium of a bill of particulars. The defendants filed a joint answer. In addition to a general denial, they pleaded title by adverse possession of twenty years, and that plaintiffs' right to recover was barred by reason of certain judgments obtained by the predecessors in title of defendants in actions prosecuted by them in the courts of France and in the courts of Porto Rico during the Spanish regime, and by reason of a judgment of dismissal entered in favor of predecessors in title of defendants and against the plaintiffs, in a suit in equity brought by the latter in the trial court below in the year 1904 to quiet the title to the premises in controversy. A motion was filed to strike out portions of the answer as alleging mere evidentiary matter, and a demurrer was also filed to the special defenses of *res judicata*. The motion and demurrer were overruled, the court filing an opinion, in which it detailed the substance of the matters set up in the answer, and, in effect, held that the decrees or judgments of the French and Porto Rican courts prior to the cession from Spain were *res judicata* as to the claims of the plaintiffs, unless their rights had subsequently arisen. After setting forth its reasons for such conclusion the court called upon the plaintiffs "to file a replication within ten days or such longer period as they may, if at all, be entitled to, setting up the fact whether or not the answer is true in so far as it sets out the source of plaintiffs' title and describes or recites these proceedings in other courts regarding this property." This requirement was followed by the statement that "If it shall transpire that the answer has set up the real facts in the case, then, on the application of

defendants, the action will be immediately dismissed at the cost of the plaintiffs." Thereafter a replication was filed on the part of the plaintiffs, which, omitting the title and the signatures of the attorneys, is as follows:

## " Replication.

"Now come the plaintiffs herein, in conformity with the order of the court entered herein and make reply to the answer of the defendants as follows:

"First. They deny that the defendants have ever had any just title to the premises or that those from whom they derived title have possessed the premises in good faith or with just title.

"Second. The plaintiffs impugn the alleged prescription either of ten years or of twenty years.

"Third. The plaintiffs deny the allegations in the answer that the ancestor Clemente de Fleurian has obtained the deed to the properties described in the complaint through fraud and they allege that he purchased the said properties in good faith and for valuable consideration, and always was ready and the plaintiffs are ready to comply with all the conditions of the said deed of sale, and that said deed was delivered to him by the vendors and their agents.

"Fourth. The plaintiffs admit that the judgments mentioned in the answer as a third defense to the complaint have been rendered but the suits in which said judgments were rendered have been instituted against Clemente de Fleurian while he was insane and out of his mind and without any curator or guardian or committee of his person being named by the court; and that the defendants herein were neither parties nor privies to the said judgments and suits and appeals, and therefore said judgments cannot bar this action.

"Fifth. The plaintiffs admit that the judgment mentioned in the answer as a fourth defense to the complaint has been rendered, but the plaintiffs state that the court which rendered said judgment had no jurisdiction in the subject matter,

and said judgment being of a foreign court without jurisdiction is not binding; and the plaintiffs further allege that the defendants herein were neither parties nor privies to the said judgment and suit, and therefore said judgment is not a bar to this action.

"Sixth. The plaintiffs further replying say that the judgment or decree mentioned in the answer as a fifth defense to the complaint was rendered not upon the merits of the case and without any proof being taken, but only upon a demurrer to the complaint for want of equity and for laches, both purely equitable defenses available only in suits in equity, and the plaintiffs state that this decree is not a bar to this action.

"Wherefore the plaintiffs pray judgment thereon."

Thereupon the following entry of dismissal was made:

"Now come the plaintiffs by their attorneys, Boerman & Llorens, and file a replication to the answer in this cause, and upon consideration thereof it appears to come within the rule laid down in the court's opinion on the demurrer to the answer of the defendants filed June 1st. Now, upon application by Hartzell and Rodriguez, the attorneys of said defendants, the cause is dismissed at the cost of the plaintiffs, to be taxed by the clerk, for which execution may issue.

"Plaintiffs except to the dismissal hereof."

From this judgment of dismissal the appeal now before us was taken. In addition to assigning as error the overruling of the demurrers to the respective defenses of res judicata, it is set up that "The court erred in rendering judgment against the plaintiffs in said cause upon the pleadings in said cause, and that said judgment is contrary to the law and facts as stated in the pleadings in said court."

As upon the overruling of the demurrer, the court in substance made it a condition for granting leave to reply to the answer that such reply should disclose that the answer had not set up the real facts in the case, which condition was manifestly not complied with in the replication, we shall review the

action of the court upon the hypothesis that the order overruling the demurrer had also absolutely decreed a dismissal of the complaint. On this assumption we proceed to examine the defense setting up as *res judicata* the judgments of the Porto Rican courts rendered during the Spanish regime to determine whether the court properly held that they barred recovery.

The defense in question covers twenty-six pages of the printed record, the judgment of the court of first instance embracing seventeen and that of the Supreme Court of Porto Rico seven pages. The judgments establish the following, among other, facts: The real estate, the subject of controversy, was a sugar plantation known by the name of Serrano. The plantation was owned in 1879 and prior thereto by David Laporte and others, and Clemente de Fleurian, through whom plaintiffs claim title, was the manager of the plantation. On October 9, 1879, what is termed a "private contract of sale" of the plantation to de Fleurian was executed in France. In November following the owners of the property brought suit in the civil court of Nimes, France, to annul the contract. On February 18, 1880—the day after the return of de Fleurian to Porto Rico—although the contract of sale was not of record in Porto Rico, de Fleurian mortgaged the plantation to one Labastide to secure the payment of 36,811 pesos. The civil court of Nimes on May 10, 1880, entered a decree of nullity in the suit brought by the Laportes, and this decree, upon the appeal of de Fleurian, was affirmed by the Court of Appeals of Nimes on March 24, 1885, and by the Court of Cassation on May 17, 1886.

Pending the litigation just referred to, the Laportes, in the proper district in Porto Rico, "instituted possessory proceedings for the said property," in which Labastide and his wife were summoned "as abutting owners," and, they not making opposition, the title of the Laportes was duly registered. Thereafter, the Laportes, by public instrument of October 16, 1883, "sold the property to Don Juan Forgas and

to Don Jose Gallart, free of all incumbrances, the vendors binding themselves to guarantee the title to the same as well as to answer for all obligations for which the said property might be liable."

In the defense we are considering it was averred that title to the premises came to the defendants through Forgas and Gallart. It is also averred as follows:

"That these defendants are the successors and privies in the ownership of said property to said original owners and to the said Gallart, and Forgas and the succession of Gallart by virtue of the said sale to the said Forgas and Gallart. That in the deed selling and conveying said premises by the said owner to the said Forgas and Gallart, it was expressly contracted and agreed that the said owners should conduct the litigation necessary to free the title of said premises from any lien, cloud or incumbrance whatsoever, and the same was made the express condition of the payment of a large portion of the purchase price of said premises. And that in pursuance of said obligation resting upon the said owners of said property, in addition to the proceedings in the courts of France hereinbefore referred to; the said owners of the said property commenced their action in the court of first instance in the judicial district of Ponce, Porto Rico, the district where the said lands were located, the said court having full jurisdiction over the said property and over the said defendants. The object of said suit being to cancel and to have declared null and void or for the rescission, as the case might be, of the private contract of sale of the said plantation described in plaintiff's complaint and known as 'Serrano,' and also to have declared null and void and for the rescission and cancellation of the said mortgage executed by the said Fleurian in favor of the said Labastide."

As above mentioned, the litigation in France was commenced by the Laportes before the sale to Forgas and Gallart, and continued after such sale, terminating in May, 1886. The action against de Fleurian and Labastide in the Porto

Rican courts, referred to in the excerpt just made, was commenced on May 9, 1887, and the final judgment of the trial court relied upon as *res judicata* was entered therein on October 26, 1889. In that judgment, after referring to the proceedings had in the litigation in France, as shown by the records of the judgments of the French courts which were in evidence, the court of first instance, after making certain statements as to the effect as *res judicata* of the French judgments, which statements are copied in the margin,[1] pro-

_____

[1] 9. Whereas there is not any treaty between France and Spain providing special rules as to the force and efficacy of the contracts executed and of judgments rendered in civil matters in any one of said nations as regards the other, and therefore, the general principles of international law are applicable to the case, among which of said principles there is the principle of reciprocity, specially expressed as to the execution of judgments rendered by foreign courts in articles 951 and 952 of the law of Civil Procedure.

10. Whereas, according to the French legislation, real property, even if possessed by foreigners, is governed by the French law (article 3d of the Civil Code) "A judicial mortgage does not ensue from a judgment rendered in a foreign country except when such judgment has been declared executory by a French court" (paragraph 4 of article 2123); "contracts entered into in a foreign country and acts executed before foreign officers cannot produce mortgage on property in France" (article 2128); "the said acts and judgments are not subject to execution in France except in the manner and in the cases provided by articles 2123 and 2128 of the Civil Code" (article 546 of the Code of Procedure).

11. Whereas, according to the general interpretation in France as to the aforesaid provisions of its legislation, as well as to article 14 of the Civil Code, the acts and judgments rendered by foreign courts are subject to revision and new discussion before the French courts, and that in that respect and on the principle of reciprocity the final judgment rendered by the French courts, to which reference has been made in this action by the plaintiff, cannot produce the force and effect of *res judicata* as to a decision of the questions which are being ventilated in the same, especially when the same have not had the execuatur of the Supreme Court of Justice in the form provided by article 954 and subsequent articles of the said law of Civil Procedure.

12. Whereas, according to the principle of private international

ceeded to reinvestigate the merits of the controversy and determine the questions arising as matters of first impression, concluding by giving to the plaintiffs the full relief demanded, the judgment reading as follows:

"I adjudge that Don Clemente de Fleurian is held to have confessed to the questions propounded at folios 340 and 341 of the second record of the roll of evidence of the plaintiffs. I should declare and do declare also the nullity of the instrument of sale and of the instrument of mortgage of the sugar cane plantation, called 'El Serrano,' the first of which was executed in the private contract in Anduze, France, dated October ninth, eighteen hundred and seventy-nine, between the plaintiffs and Don Clemente de Fleurian, and the second named at Juana Diaz, before the notary Don Ramon Rodriguez, on the eighteenth day of February, eighteen hundred and eighty, by Don Clemente de Fleurian and Don Fernando Labastide, in consequence of which it is ordered that after this decision shall have been final, the annotation of the said instrument of mortgage in the registry of property be cancelled, for which purpose the proper orders shall issue with the necessary excerpts addressed to the registrar of property for the district, taxing all costs against the defendants, Don Clemente Fleurian and Don Fernando Labastide. Thus, finally adjudging, was pronounced, ordered and signed by the judge."

On an appeal, taken by Labastide, the Supreme Court of Porto Rico on January 28, 1891, affirmed the judgment of the court of first instance. Thereafter an appeal, also taken by

_____

law, sanctioned by the Supreme Court of Justice in several opinions, the efficacy of the acts or contracts affecting directly real property, are governed by the royal statute or namely, by the laws of the country where the real property is situated, and therefore, as the question in this suit is in regard to a property situated in a Spanish territory, the questions relating to the nullity or validity of the title to the said property, and of the mortgage put on the same, should be ventilated or decided in accordance with the Spanish laws. *Locus regit actum.*

Labastide, to the Supreme Court of Spain was dismissed, and it is averred in the answer that "the said decision of the Supreme Court of Porto Rico became firm and fixed, and is still in full force and effect;" and that pursuant to the decisions of the Porto Rican courts above referred to "the proper orders were issued and the registration of the said mortgage from the said Clemente de Fleurian to the said Labastide was duly cancelled and annulled in the registry of property of Ponce, and the said decision of the court of first instance of Ponce and the said decision of the Supreme Court of Porto Rico, confirming the same, have been carried out as to all matters and things which were ordered and directed therein and thereby."

The question then is whether these judgments of the courts of Porto Rico, entered in litigation prosecuted in the names of the former owners for the benefit of their vendees, through whom the defendants in this action deraign title, is, as contended by the defendants in error, "a full, complete and final determination of all the matters and things relating to the alleged title of the said Clemente de Fleurian in or to the said premises described in the plaintiff's complaint herein," operative as *res judicata* in favor of the defendants, and constituting a bar to the further prosecution of the proceedings under the complaint herein. We proceed to consider this question.

It is recited in the judgment entered on October 26, 1889, by the court of first instance of Porto Rico, that the then pending action was commenced on May 9, 1887, by the Laporte heirs, and it also expressly found that the property had been sold prior to the institution of the action, viz., on October 16, 1883, by the Laportes to Forgas and Gallart, from whom mediately or immediately the present defendants acquired title, "the vendors binding themselves to guarantee the title to the same as well as to answer for all obligations for which the said property might be liable." It is also apparent from the findings of the court that the action referred

to was intended to make effective the result of the proceedings instituted in France, which had been commenced in order to remove the cloud upon the title of the Laportes resulting from the contract of sale made to de Fleurian and the mortgage made by him to Labastide. As the judgment of the court of first instance reciting the facts referred to was affirmed by the Supreme Court of Porto Rico, we may properly assume that the Porto Rican courts did not consider that they were passing upon a merely moot question, but were of opinion that the adjudication made inured to the benefit of the vendees of the nominal complainants, such vendees being the real owners. It being then competent, under the Spanish law, for the vendors of property, after parting with title, to conduct in their own names for the benefit of their vendees a litigation having for its object ultimate relief such as was sought in the action so instituted by the Laporte heirs in 1887, we are of opinion that there is no merit in the contention upon which plaintiffs in error rely in assailing the sufficiency of the defense set up in the third paragraph of the answer. In effect, that contention simply was that as the original owners had sold the property before the institution of the action commenced in 1887 the defendants herein, as claimants under purchasers who had bought from the Laportes before the commencement of that action, are not in privity with the complainants in that suit, as they were mere strangers to the litigation and not entitled to enjoy the benefit of the adjudication. Let it be conceded, for the sake of argument, that ordinarily no one is privy to a judgment whose succession to the rights of property thereby affected occurred previously to the institution of the suit (*Dull* v. *Blackman*, 169 U. S. 248; Freeman on Judgments, 1st ed., § 162), nevertheless the rule has no application to a case like this where the nominal plaintiffs or complainants were in legal intendment conducting the litigation under the direction and for the benefit of the real owners of the property. The persons for whose benefit, to the knowledge of the court and of all the parties

to the record, litigation is being conducted cannot, in a legal sense, be said to be strangers to the cause. The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record. *Lovejoy* v. *Murray*, 3 Wall. 1.

There is no merit in the contention that in rendering judgment upon the pleadings the court usurped the province of the jury. In the view we have taken of the case it becomes necessary, for the purpose of testing that contention, to consider only the fourth paragraph of the replication, heretofore quoted. In asserting, as was done in that paragraph, "that the defendants herein were neither parties nor prives to the said judgments, suit and appeals (referred to in the third defense), and therefore said judgments cannot bar this action," there was presented merely a question of law as to whether, upon the facts appearing in the judgments or averred in the third defense, the defendants in this action were, as a matter of law, in privity with the complainants in the cause in which the judgments pleaded as *res judicata* were rendered. And this is true also as to the charge made in the fourth paragraph of the replication that de Fleurian was insane when the judgments relied upon as *res judicata* were entered. We say this because clearly whether the judgments on such mere averment were subject to be collaterally attacked was a matter of law for the court, even if the assumption be indulged in that the right to plead the asserted insanity, which we do not intimate to be the case, was within the condition as to replying imposed by the court when it overruled the demurrer.

*Affirmed.*