**DELAMERE COMPANY, Inc., Plaintiff,**

v.

**TAYLOR–BELL CO., Inc., Defendant.**

United States District Court
S. D. New York.
Nov. 1, 1961.

Milton Pollack, New York City, for plaintiff; Francis E. Koch, New York City, and Hyman F. Glass, Alexandria, Va., of counsel.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for defendant.

McGOHEY, District Judge.

This is one of two related suits in different federal district courts. Each involves the validity and infringement of the same patent for a hair curling device. The instant suit seeks as one item of relief, a judgment declaring the patent invalid and not infringed by Delamere's device. It was commenced on June 21, 1961. The other suit is pending in the Western District of Virginia where it was commenced on June 1, 1961 by Taylor-Bell, a licensee under the patent, against F. W. Woolworth Co., a customer of Delamere, for alleged infringement of the patent and unfair competition.

Delamere has moved here, pursuant to Fed.Rules Civ.Proc. Rule 65, 28 U.S.C.A., to enjoin Taylor-Bell from prosecuting its suit in Virginia.

Delamere is a Delaware corporation having its principal place of business in New York.

Taylor-Bell Co., Inc. is a New York corporation. F. W. Woolworth Co. (Woolworth) is a New York corporation whose executive offices are in New York.

On May 16, 1961, Taylor-Bell, through its attorneys, by letter, charged Delamere with patent infringement by reason of the latter's manufacture and sale of a hair curler sold under the registered trademark "Goody." By another letter bearing the same date, Taylor-Bell also charged Woolworth with infringement by reason of its retail sale of Delamere's "Goody" curlers. The letter to Wool-

worth was addressed to its principal place of business in New York. On May 25, 1961, Delamere's attorney notified Taylor-Bell's attorney orally, and on May 29, 1961 by letter, that Delamere would take legal steps to protect itself from Taylor-Bell's charges.

On June 1, 1961, Taylor-Bell instituted suit against Woolworth in the Western District of Virginia seeking temporary and permanent injunctions against Woolworth's alleged patent infringements and unfair competition, and an accounting of profits in the sale of the alleged infringing "Goody" curlers by Woolworth.[1] The latter, in its answer filed July 7, 1961, denied infringement and unfair competition and, as an affirmative defense, asserted the invalidity of the patent under which Taylor-Bell claimed.

On June 21, 1961, Delamere instituted the instant suit seeking: (1) judgment declaring the Taylor-Bell patent invalid; (2) judgment declaring that Delamere is not competing unfairly with Taylor-Bell; (3) injunction restraining Taylor-Bell from suing Delamere or "any distributor, dealer, agent, and any customer of plaintiff and any user of plaintiff's hair rollers or curlers" for infringement of the patent; and (4) damages for alleged tortious interference with Delamere's business relations with Woolworth by reason of the warning letter of May 16. Taylor-Bell, in its answer filed July 11, denied Delamere's claim and asserted counterclaims for patent infringement and unfair competition.

The fragmentation of patent litigation is neither novel nor noble. See Rayco Mfg. Co. v. Chicopee Mfg. Corp.[2]

On several occasions when a declaratory judgment suit of this sort was followed by an infringement suit in another district by the original defendant against a customer of the first plaintiff, the courts of this circuit have stayed the proceedings against the customer. Remington Products Corp. v. American Aerovap, Inc.;[3] Helene Curtis Industries, Inc. v. Sales Affiliates, Inc.;[4] Telephonics Corp. v. Lindly & Co.[5] It is apparent that many of the same considerations which led to those decisions are also present here. All the corporations here involved have their principal places of business in New York; all witnesses whose testimony would be relevant to the issue of validity or infringement are located in or near New York. Woolworth, even to defend the unfair competition aspects of the Virginia suit, would have to rely chiefly on witnesses connected with Delamere, since Woolworth sells the alleged infringing curlers in the packages and with the same labels it receives from Delamere; and it uses promotional materials supplied it by Delamere. Taylor-Bell is represented by Virginia counsel in its suit there, but its New York attorneys are "of counsel" in the Virginia suit. New York further appears to be the natural "theatre" for this "war," Kerotest Mfg. Co. v. C–O–Two Co.,[6] because the warning letters were written by Taylor-Bell's New York attorneys to the New York offices of Delamere and Woolworth, and the alleged Woolworth infringement, according to the deposition of Taylor-Bell's president, was discovered by him in New York. Taylor-Bell's simple assertion, in its brief, that the Virginia forum is "obviously more convenient" to it because "it chose that forum after deliberate review of all the facts," is not persuasive. The convenience of witnesses would unquestionably be better served by a New York venue.

■ An obvious difference between this case and those cited above—and, it is urged by Taylor-Bell, a controlling one—is the chronology of the two suits.

---

1. Woolworth was served at its place of business in Charlottesville.

2. D.C., 148 F.Supp. 588, 592.

3. D.C., 97 F.Supp. 644, aff'd 2 Cir., 192 F. 2d 872.

4. D.C., 105 F.Supp. 886, aff'd 2 Cir., 199 F. 2d 732.

5. D.C., 192 F.Supp. 407, aff'd 2 Cir., 291 F. 2d 445.

6. 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200.

In the cited cases, the customer suits which were enjoined were commenced *after* the suit between the competing manufacturers, the time gap ranging from four days to seven months. Here the Virginia suit against the customer *preceded* the declaratory judgment suit by three weeks. Here, however, the single force of this time priority may be minimized if Taylor-Bell's warning letters to both Delamere and Woolworth on May 16 can be viewed as the real beginning of the dispute. These letters were quickly followed by a conference in New York between Delamere's and Taylor-Bell's attorneys, and by Delamere's notice on May 25 to Taylor-Bell that Delamere "would consider and take appropriate legal steps." Only after this was the suit against Woolworth commenced in Virginia. However that may be, priority of suit alone creates no absolute right. At most, it may do no more than determine which party has the burden of showing the "balance of 'convenience.'" Gulf Oil Corp. v. Gilbert;[7] Ford Motor Co. v. Ryan.[8] In cases like the present one, it may indeed do less, for different considerations are present here. Gulf Oil and Ford Motor Co. were strict forum non conveniens or transfer cases in which the parties to all suits or possible suits were the same. But here the question is not whether one suit between the same parties should be tried in one district or another, but whether two suits between different combinations of parties on the same basic issues should be allowed to proceed simultaneously in two forums. In resolving this question district courts necessarily have wide discretion. Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.[9] There the customer suit was first commenced in Illinois, and the declaratory judgment suit was thereafter begun in Delaware. The Illinois plaintiff (C–O–Two) then joined the Delaware plaintiff (Kerotest) as a party in Illi-

nois. The Delaware district court felt constrained to enjoin C–O–Two from proceeding in Illinois against Kerotest because the latter had instituted its declaratory judgment suit in Delaware before it was made a party in Illinois. The Court of Appeals reversed and stayed the Delaware proceedings.[10] The Supreme Court affirmed.

A similar situation is present here. Delamere, with which Taylor-Bell has its real dispute, is not a party in the Virginia suit and cannot be made one. While Woolworth is not yet a party in the New York suit, it has consented to be made one and is in any event amenable to service here.

In earlier cases in this circuit, priority of suit was regarded as only one among several factors to be considered. In Remington Products Corp. v. American Aerovap, Inc.,[11] the "manufacturer, and party most interested" was not joined in the suit against the customer, while all the parties "interested in the action" were present in the declaratory judgment suit, which included "all the issues of the [second] action plus additional issues * * * which issues cannot be decided in the [second] action." Substantially the same situation was present in Helene Curtis Industries, Inc. v. Sales Affiliates, Inc.,[12] where the court also noted that a decree in favor of the patent in the suit against the customer would not be res judicata as to the allegedly infringing manufacturer, and a decree against the patent would still leave the patent owner free to sue other customers. A decision in the suit between the competing manufacturers, on the other hand, would settle the issue finally and prevent further suits. The manufacturer prosecuting the customer suit in Texas had no place of business there, while all persons said to have knowledge of the patent's validity were located in New York. The court

7. 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

8. 2 Cir., 182 F.2d 329, 330.

9. 342 U.S. 180, 183–184, 72 S.Ct. 219, 96 L.Ed. 200.

10. 3 Cir., 189 F.2d 31.

11. D.C., 97 F.Supp. 644, 647, aff'd per curiam 2 Cir., 192 F.2d 872.

12. D.C., 105 F.Supp. 886, aff'd per curiam 2 Cir., 199 F.2d 732.

58

concluded that this was "forum shopping with a vengeance. * * * On the uncontested facts, there is nothing to be gained by a trial in Texas rather than here, and there is much which commends the conclusion that this forum will best serve the ends of justice. The contrary conclusion is not only a defiance of fact but a subscription to the sporting theory of justice as well." [13] In Telephonics Corp. v. Lindly & Co.,[14] the declaratory judgment suit was instituted in New York in October 1959. Seven months later, but before answering, defendant instituted an infringement suit against a customer in North Carolina. That customer then consented to be made a party to the New York action. Judge Byers found the defendant's maneuvers "consistent with a forum shopping technique which is as obvious as though it were openly avowed." In affirming, the Court of Appeals listed what it considered the "relevant factors":

"The New York action had been pending seven months when the action in North Carolina was started. The plaintiffs and the defendant are New York corporations having their respective principal offices in the Eastern District of New York, and the alleged infringement was committed in the making and selling of defendant's product by plaintiff at their principal office in this district. The action subsequently begun against plaintiff's customer in North Carolina was simply an attempt to litigate in another forum a dispute that is basically between the plaintiffs and the defendant. Since the order below permitted Glen Raven to intervene as a party plaintiff in the present action, defendant may have any affirmative relief that is justified

against Glen Raven by way of counterclaim here. The fact that the North Carolina action was brought against a defendant not originally a party to the New York action is thus no bar to the grant of the injunction appealed from." [15]

See also Ronson Art Metal Works, Inc. v. Brown & Bigelow; [16] Shikler v. Weinstein; [17] Squeez–A–Purse Corp. v. Stiller.[18]

Taylor-Bell urges that it should be allowed to proceed with its suit in Virginia against Delamere's customer because of the less congested condition of the Virginia court's trial calendar. Similar arguments were made in most of the cases considered herein but were found outweighed by the other factors present. "If an early trial were the crucial test, then in virtually every instance the Southern District of New York would be ousted of its jurisdiction. * * *" Helene Curtis Industries, Inc. v. Sales Affiliates, Inc.; [19] see also Ronson Art Metal Works, Inc. v. Brown & Bigelow.[20]

Taylor-Bell urges that Delamere, even though not a party, will be bound by the result in the Virginia suit, under the familiar rule that one not a party to the action who openly controls its defense will be bound by its outcome. Souffront v. Compagnie des Sucreries; [21] Minneapolis-Honeywell Regulator Co. v. Thermoco, Inc.; [22] E. I. Du Pont de Nemours & Co. v. Sylvania Industrial Corp.[23] However, all that Taylor-Bell can now show is a clause in Woolworth's standard purchase order form by which Woolworth is indemnified against claims. On the other hand, there is nothing whatever to show that Delamere is actually taking control or indeed any hand in the defense of the Virginia suit, which as far as now appears is being conducted by Virginia

13. Id. 105 F.Supp. at 902.

14. D.C., 192 F.Supp. 407, 415, aff'd 2 Cir., 291 F.2d 445.

15. 291 F.2d at 446–47.

16. D.C., 105 F.Supp. 169, aff'd per curiam, 2 Cir., 199 F.2d 760.

17. D.C., 105 F.Supp. 48.

18. D.C., 149 F.Supp. 60.

19. Supra.

20. Supra.

21. 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846.

22. 2 Cir., 116 F.2d 845.

23. 4 Cir., 122 F.2d 400.

attorneys retained through Woolworth's general counsel in New York. This is far short of the control shown in such cases as Bros, Inc. v. W. E. Grace Mfg. Co.,[24] or Doherty Research Co. v. Universal Oil Products Co.[25] cited by the defendant. See also Marshall Metal Products, Inc. v. Aghnides.[26]

In Joseph Bancroft & Sons Co. v. Spunize Co. of America,[27] the Court of Appeals reversed the District Court's injunction against prosecution of an infringement suit against a licensee. Spunize was the owner of a single patent for a filament yarn crimped in a particular manner. Bancroft owned or controlled numerous patents relating to method and apparatus for the crimping of filament yarn. It had license agreements under which it received royalties, with several manufacturers, including Duplan. Spunize instituted an infringement suit against Duplan on July 11, 1958, in North Carolina. Bancroft instituted a declaratory judgment suit against Duplan on August 1, 1958, in Connecticut, contending that the North Carolina suit was a direct attack on the legality of its license agreements. Before answering the complaint, Spunize moved to dismiss the Connecticut action, or to transfer or stay it. Bancroft moved to restrain Spunize from prosecuting the North Carolina suit. In the district court, Spunize's motions were denied and the motion of Bancroft to enjoin the North Carolina suit, was granted. The Court of Appeals reversed, holding that "where two suits are filed in different forums, the first has priority * * *. There should be no restraint of the prior suit by injunction 'except to prevent a manifest wrong or injustice' * * * and then only if 'the same parties as well as the same issues are involved in the two actions,' * * *." Kerotest was distinguished because "in the case at bar there is no suggestion of harassment or multiplicity of suits against customers or man-

ufacturers calling for equitable intervention." Bancroft is distinguishable from the instant case in several respects. There, North Carolina was "the only district in which the infringing acts were being committed by Duplan;" this cannot be said here. Further, the relative positions of licensor-licensee and manufacturer-customer are different.[28]

Delamere, unlike Bancroft, is a manufacturer, and it has been charged with a direct infringement in the counterclaim filed in the declaratory judgment suit. Unlike the Bancroft case, all the issues present in the prior suit are present in this suit; anticipating that Woolworth will be brought into this suit, all the parties are here present, also.

 The motion to enjoin the defendant from proceeding with the Virginia suit is granted.

Submit proposed order on notice.

---

24. 5 Cir., 261 F.2d 428.

25. 7 Cir., 107 F.2d 548.

26. D.C., 126 F.Supp. 850.

27. 2 Cir., 268 F.2d 522, 524.

