821 P.2d 319

Orvil DURRANT and Faye Durrant, husband and wife; Kenneth W. Sellers, Plaintiffs–Respondents,

v.

Ruby CHRISTENSEN, Defendant–Appellant.

No. 18817.

Supreme Court of Idaho, Pocatello, September 1991 Term.

Nov. 25, 1991.

Kerr Law Office, Blackfoot, for defendant-appellant. Robert J. Kerr, Jr., argued.

Whittier, McDougall, Souza, Murray & Clark, Chartered, Pocatello, for plaintiffs-respondents. John C. Souza, argued.

JOHNSON, Justice.

The issue presented in this appeal is whether the trial court abused its discretion in denying sanctions pursuant to I.R.C.P. 11(a)(1). We conclude that the trial court did not abuse its discretion.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.

This is the second appeal to this Court in this case. The decision in the first appeal is *Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990) (*Durrant I*). In *Durrant I*, we remanded the case and directed the trial court to reconsider the award of sanctions against the Durrants, Sellers, and their attorney pursuant to I.R.C.P. 11(a)(1). In doing so, we held that "reasonableness under the circumstances, and a duty to make a reasonable inquiry prior to filing an action, is the appropriate standard to apply." 117 Idaho at 74, 785 P.2d at 638.

On remand, the attorney for the Durrants and Sellers submitted an affidavit stating the information the Durrants and Sellers provided their attorney prior to the filing of this action. The attorney for Christensen submitted an affidavit in response. Following oral argument, the trial court issued a memorandum decision and order finding that the Durrants, Sellers, and their attorney acted reasonably under the circumstances, and denying sanctions pursuant to I.R.C.P. 11(a)(1).

Christensen moved to alter or amend the trial court's order and presented a further affidavit of her attorney in support. Christensen also presented a partial transcript of the hearing concerning the order to show cause and motion to vacate the temporary restraining order that was held prior to the appeal in *Durrant I*. The trial court denied Christensen's motion to alter or amend the order denying sanctions pursuant to I.R.C.P. 11(a)(1). Christensen appealed.

## II.

## THE TRIAL COURT APPLIED THE CORRECT STANDARD AND DID NOT ABUSE ITS DISCRETION IN DENYING SANCTIONS PURSUANT TO I.R.C.P. 11(a)(1).

Christensen asserts that in reconsidering the award of sanctions on remand, the trial court did not apply the standard stated by this Court in *Durrant I*, and abused its discretion in denying the award of sanctions. We disagree.

In *Sun Valley Shopping Center v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991), we applied a three-part test to determine whether the trial court abused its discretion in deciding whether to award sanctions under I.R.C.P. 11(a)(1). Applying the same test in this case, we conclude that the trial court (1) correctly perceived the issue as one of discretion, (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) reached its decision by an exercise of reason.

In its memorandum decision and order, the trial court quoted the standard contained in *Durrant I* for imposition of sanctions under I.R.C.P. 11(a)(1) and clearly demonstrated that it perceived it had the discretion to award or deny sanctions pursuant to this standard.

In *Durrant I*, we held that "reasonableness under the circumstances, and a duty to make a reasonable inquiry prior to filing an action, is the appropriate standard to apply." 117 Idaho at 74, 785 P.2d at 638. In denying the sanctions requested against the attorney for the Durrants and Sellers, the trial court relied, at least in part, on the affidavit of the attorney submitted after our remand in *Durrant I*. This affidavit contained a summary of the discussions between the Durrants and Sellers and their attorney prior to the filing of the complaint. In its decision, the trial court focused on these discussions. The trial court ruled that the attorney met the "minimum requirement of 'reasonable inquiry'" and had a "'good faith argument' for his view of what the law is, or should be." The trial court also found that the complaint was not filed to harass Christensen.

The trial court's decision denying sanctions against the attorney for the Durrants and Sellers demonstrates that the trial court acted within the outer boundaries of its discretion and consistently with any rules applicable to specific choices. The trial court reached its decision by an exercise of reason.

The trial court also found that the actions of the Durrants and Sellers were reasonable under the circumstances and that an award of sanctions against them under I.R.C.P. 11(a)(1) was not appropriate. Christensen asserts that the affidavit of the attorney for the Durrants and Sellers was hearsay so far as their reasonable inquiry is concerned. We agree. If this affidavit were the only source of evidence concerning the reasonableness and inquiry of the Durrants and Sellers, we would be inclined to reverse the trial court's denial of sanctions against them. There is, however, other evidence in the record upon which the trial court could have relied.

The affidavits of the Durrants and Sellers submitted in support of their petition for a temporary restraining order stated that Christensen had taken steps to deprive them of their water rights and had interfered with their water rights, including blocking headgates, destroying ditches, and "refusing to rotate water use." The trial court could have concluded from these statements that the Durrants and Sellers reasonably inferred that Christensen was asserting control as an owner over the property contiguous to theirs.

Also, in its findings the trial court referred to the testimony of the Durrants and Sellers at the hearing concerning the temporary restraining order that preceded the first appeal in this case. The record on appeal in this case does not contain the transcript of the testimony of these witnesses. Counsel for the Durrants and Sellers stated at the oral argument in this appeal that the testimony of his clients at the hearing concerning the temporary restraining order supported the trial court's finding that the actions of the Durrants and Sellers were reasonable under the circumstances. Counsel for Christensen denied this statement.

In *Rutter v. McLaughlin*, 101 Idaho 292, 293, 612 P.2d 135, 136 (1980), the Court said:

> On appeal the appellant must carry the burden of showing that the district court committed error. Error will not be presumed on appeal but must be affirmatively shown on the record by appellant. Where an incomplete record is presented to this Court, the missing portions of that record are to be presumed to support the action of the trial court.

(Citations omitted).

Applying this rule to this case, we presume that the record of the hearing concerning the temporary restraining order supports the decision of the trial court, that the Durrants and Sellers were reasonable under the circumstances, and that sanctions against them under I.R.C.P. 11(a)(1) were not appropriate.

We conclude that the trial court acted within the outer bounds of its discretion and consistently with the legal standards applicable to the specific choices available to it. The trial court reached its decision by an exercise of reason.

## III.

## CONCLUSION.

We affirm the trial court's denial of sanctions under I.R.C.P. 11(a)(1) against the Durrants, Sellers, and their attorney.

We award costs on appeal, but not attorney fees, to the Durrants and Sellers.

BAKES, C.J., and BISTLINE, BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, concurring and specially concurring.

For reasons stated in my dissenting opinion in *Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990), I concur in today's opinion for the Court, as far as it goes. To achieve real justice in this case, however, one more step needs to be taken. Assuming that the awards of attorney fees and costs in *Durrant I*, respectively $3632,50 and $499.40, have been paid, the only means of bringing the scales of justice into balance is a like award to the Durrants and Kenneth Sellers. To do less would be unjust. As one of my early mentors, Judge McNaughton, would have stated it, in *Durrant I*, the Durrants and Sellers were "mulcted in damages": $3632.50 in attorney fees and $499.40 in court costs. Anyone doubting that assessment is free to comment otherwise, but only if he or she can verify as to having read that which follows:

BISTLINE, J. dissenting.

My reasons for being unable to join the Court's opinion are easily stated. Although the opinion reads well, there are certain facts not presented which should be given full consideration in coming to a fair appellate determination. A district court's judgment should not be dealt a reversal unless such is absolutely required. There is only one aspect of this case in which Judge Herndon may have been led astray, which is in awarding

$1000 in attorney fees to Ruby Christensen. Nevertheless, although that amount by today's standards is not exorbitant and ordinarily would appear to be a proper amount to recompense her for what she is probably being charged by her attorney, any award cannot be justified. Other than for that monetary award, it is clear that Judge Herndon's disposition of the issues presented to him was substantiated. This Court's opinion, especially the second paragraph, presents an inconsistency which the interests of justice should not tolerate. Attention is directed to the opinion wherein it is accurately stated that, "in her answer, Christensen asserted that she was not the owner of the property, and *the parties stipulated* to entry of a temporary restraining order to maintain the status quo." True, she did disclaim ownership, but equally true, she was *an* owner, although perhaps not the sole owner.[1] As such she was *a* proper party defendant. What she actually contended was only that the *title of record* was not vested in her name, which is not the equivalent of averring that she was not an owner. This not insignificant problem will be further discussed after the $1000 attorney fees award is further questioned. That award was bottomed on Christensen's legal fees incurred in obtaining a dissolution of the above-mentioned temporary restraining order.

Orville Durrant, his spouse, and Kenneth Sellers are the plaintiffs; their objective was to obtain what they considered to be the fair share of the irrigation water which was allocated to their property. It was the plaintiffs who requested the status quo allocation of water left in place during the ensuing period of litigation. Without offering any contest to the plaintiffs' request for the temporary restraining order, it was Christensen through counsel who *stipulated* to the entry of the requested order, and the trial court's order was entered pursuant to the stipulation. Supposedly the stipulation and the order were purposed toward maintaining peace between the neighboring parties while evidence and law was presented and the court resolved the dispute.

However, it turned out otherwise. Christensen moved to set aside the very order to which she had stipulated! Conceded, had she not so stipulated, she could have moved to have it vacated. However, principles of law have precluded her from now doing so, *i.e.*, the entry of the order maintaining the status quo distribution of the water, and then turning around and moving to set it aside. Presumably entry of the stipulated order resulted from an agreement that during the pendency of the litigation *both* parties would benefit from a court order which prevented each from interfering with the flow of irrigation water while the action was pending. It was pursuant to their stipulation that the court's order was entered. There may be a more classic example of the application of judicial estoppel, and/or equitable estoppel as well, but it is not readily brought to memory.

Moreover, it has to be remembered that Christensen was at all times the only named party defendant. As an apparent owner of the entire title (being in possession) and definitely a part owner of the property, ostensibly she had the consent of her co-owners[2] in order to

---

1. The Court's opinion somewhat ingeniously wholly avoids coming to grips with this actual factual circumstance by saying only that "Christensen was not *the* owner of the property."

2. The deed to the property was supposedly transferred to L & R Christensen Investments Limited Partnership approximately two years before these events transpired. Idaho Code § 53–213 mandates the filing of the certificate of limited partnership with the secretary of state. However, the secretary of state has no record of L & R Christensen Investments before

June 16, 1988, a full four months *after* the complaint in this action was filed. It is very difficult to vest ownership in an entity which does not yet exist, and it would have been impossible for the plaintiffs to know of the existence of the partnership if no record of its existence was on file. Moreover, the documents at the secretary of state's office list Ruby Christensen as the general partner in L & R Christensen Investments, with Kit Christensen, Mary C. Sellers, and DeAnn C. Bradford listed as the limited partners. *See* Appendix A.

enter into the stipulation. Likewise, she later would have had to obtain the consent of her co-owners authorizing her to move to vacate the district court order to which she and the plaintiffs had agreed. Forgetting for the moment the principles of equitable and judicial estoppel, and resorting to the vernacular, there is good reason to suggest what we see here is a pure, unadulterated case of western style bushwhacking. Today's majority countenances such conduct. Were it not for the district court's having been used as an instrumentality of this gamesmanship, such conduct might be tolerated. But, under these circumstances, I must regrettably dissent from the majority's opinion. My regret is not because of being obliged to dissent, but rather flows from my inability to dissuade four members of this Court from placing the Good (judicial) Housekeeping Stamp of Approval on the scenario so clearly laid before us. It does not trouble me in the least that a highly respected district judge was misled into allowing attorney fees to Christensen. The district judges have a formidable case load to cope with. They act not in concert with one or more other district judges, but rather *individually*. The time constraints placed upon them by this Court's administrative director also constitute a hazard which has to be considered. The individual justices who comprise this Court, however, enjoy the luxurious advantage of at all times having the benefit of input, advice and analysis from four other justices.

Some other aspects of the record which we review, apparently bothersome to me alone, constitute additional aggravation over the course which justice here has taken. One learns after some forty years of participation in the law, most of which was spent as a practitioner, to be somewhat circumspect. Earlier herein mention was made of Christensen's apparent authority to both enter into the stipulation and to later seek its dissolution. Such authority was apparently conferred upon her by her co-owners of the property, title to which was in the name of a fictitious partnership. Certain sus-

picions as to human conduct and some knowledge of case law come to mind on observing that the co-owners of Christensen's property (property which is located adjacent to the plaintiffs' property), along with Christensen, were the witnesses who testified against the plaintiffs. That raised the question: On whose behalf did they so testify? The record and the transcripts of the hearing are not voluminous. On moderately close perusal thereof it is informative, but not surprising, to ascertain therefrom that Christensen's cost bill of expenses included as witness fees being charged against the plaintiffs, the following: Neal Powell, three days, at $61.20; Charles Frasure, two days, at $40.30; and Brady Bradford, three days, at $61.20.

At page 62 of the appeal record, an item of considerable interest, listed for April 12 is the entry of 5.9 hours chargeable for conferring with DeAnn Bradford, a telephone call to Brady, and a "conference with client, Frasure and Powell, research." On April 13, an item is entered for 1.5 hours, a portion of which included a "conference with client, Bradford and Powell." On April 14, a charge of 0.4 hours was entered for a telephone call to Sousa. On April 15, the entry was 9.0 hours which included court trial time, a conference with the client and witnesses. A post-trial item was a 1.0 hour charge, which included a call with Brady and a conference with Frasure. It seems clear that Brady Bradford, Neal Powell, and Charles Frasure although called as "witnesses" were involved as Christensen's co-owners and, accordingly, were in actuality unnamed defendant parties participating in the litigation. It appears likely that defense counsel himself did not consider them as parties, even though they were most obviously co-owners, simply because they were not so designated in the complaint.

It is beyond cavil that plaintiffs' suit was brought to settle water rights as between the property which they owned and possessed and the owners of the adjacent property. It is clear that all of

the involved parties, both plaintiffs and defendants, came into court and all participated in the trial. Not only did all of the defendants participate in the courtroom proceedings before Judge Herndon, but they all participated in the pretrial conferences with defense counsel. Whether the non-party defendants reimbursed Ruby C. Christensen directly or paid charged fees directly to defense counsel, is of little moment. Accepting that Christensen was not the sole owner of the property, and accepting that her "witnesses" owned whatever part of the property she did not own, and seeing as meaningless the fact that title of the property was not placed in the "witnesses" and Christensen, but rather placed in the name of an unknown and fictitious partnership, it should have been obvious that together, collectively, those persons were the ones who owned the property to which the water rights were appurtenant. They were all conferring with defense counsel as to what course of action should be taken.

Rather than come out in the open and gain a meaningful adjudication, the defendants chose the delaying tactic of asking the court to dismiss the action. With all of the interested owners in both properties appearing in the action, the court properly should have disregarded the technicality that only Christensen was a named party and proceeded to determine the merits as to the use and quantity of the water rights. There is a large body of law which holds that non-named parties who have a financial interest in a piece of property involved in litigation, and who participate in the defense of an action brought against one of them are in court for all purposes. *See, e.g., Soufront v. LaCompagnie des Sucreries de Porto Rico*, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846 (1910); *Bros., Inc. v. W.E. Grace Mfg. Co.*, 261 F.2d 428 (5th Cir. 1958). Persons who are not named parties in an action can nevertheless be bound by the determination of issues litigated in that action if they controlled or substantially participated in the control of the litigation or they had the opportu-

nity to control the presentation of a party to the litigation but did not do so. *Montana v. U.S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *State Farm Fire & Cas. v. Reuter*, 299 Or. 155, 700 P.2d 236 (Or.1985). In the instant case, even if the suit had been brought against the partnership, seemingly it would have fallen to Ruby Christensen, as the only general partner, to defend it. All of which is academic, other than for providing additional good reason for holding that the defendants were not entitled to any award of attorney fees. Judge Herndon did recognize that they were not entitled to any fees for prevailing on the main action—which was to obtain a dismissal of the action. The delaying tactics of the defendants worked, and put off a decision on the merits regarding the water rights appurtenant to the properties involved. Accordingly, nothing was adjudicated.

A more preferred course of action would have been for the unnamed defendants to voluntarily come in as named parties and have the issues resolved. Who, it might be asked, gained anything of substance from a court proceeding which consumed the district court's time, time that could have been better put to resolving other lawsuits? Apparently, only Christensen, who did obtain $1000 as attorney fees not for gaining dismissal of the main action, but solely for obtaining vacation of the temporary restraining order.

The district court was 100 percent correct, in view of these unusual circumstances, in not awarding any attorney fees to the defendants, named or unnamed, for obtaining dismissal of the underlying action. Nevertheless, Judge Herndon is being handed an undeserved reversal because of the majority's perception that the wrong rule was applied in his order denying attorney fees to the defendants. On taking any reasonable view of this litigation, no error was committed in that regard.

The majority's directions to the district court for further proceedings on remand are not substantiated by the record.

Likewise, the conclusions reached by the majority are not sustained. In reviewing Christensen's request for attorney fees under Rule 54(b) and I.C. §§ 12–120, 12–121, and under Rule 11, this Court states that the district court determined that neither plaintiffs nor their attorney proceeded in "bad faith," and practically those same words were spoken by Judge Herndon at oral argument on Christensen's motion for an award of fees. Tr. 24. However, seconds later Judge Herndon stated his belief that the plaintiffs did not pursue the case "frivolously or in bad faith nor so plainly fallacious as to be frivolous or that it was frivolously, unreasonably, or without foundation ... I think it was probably prosecuted in good faith as far as the parties were concerned. They wanted their water in the ditch and they thought their neighbor had it." Tr. 25.

The majority, in what the trial bench and bar may well perceive to be an improvident rush to apply the recently amended and reinterpreted Rule 11, cites to the *Zaldivar v. City of Los Angeles* holding which instructs that Rule 11 "sanctions shall be assessed if the pleading is frivolous, legally unreasonable, or without factual foundation." 780 F.2d 823, 829 (9th Cir.1986). Borrowing an expression which Justice Shepard used on appropriate occasions, it comes as passing strange that the majority is unaware of Judge Herndon's assessment of the plaintiffs' action, *i.e.* "that it was not pursued frivolously, unreasonably, or without foundation." Tr. 25. We already have the trial court's specific finding that the plaintiffs were not guilty of violating the sanctity of Rule 11, as that rule was interpreted in *Zaldivar.*

Reaching to the eastern seaboard, the majority then produces the holding in the *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (1985) case from the Second Circuit Court of Appeals to support its view *that it is an attorney's duty* to conduct a reasonable inquiry prior to filing an action. The majority today attaches that clause onto Rule 11, and directs Judge Herndon to reconsider his denial of sanctions. The majority eschew giving any thought whatever to the rather obvious fact that thereby the court is dictating that a retroactive application be made of today's adoption of *Eastway.* Compounding that mischief, the majority's direction on remand includes reconsideration in light of both *Zaldivar* and *Eastway,* whereas Judge Herndon has specifically already applied the rule of *Zaldivar.* By implication Judge Herndon was aware of the existing state of facts known to counsel for the plaintiffs when counsel filed the action, *i.e.,* "they [plaintiffs] wanted their water and they thought their neighbor [Christensen] had it." Tr. 25. Therefore, there is no reason to doubt Judge Herndon's application of the *Zaldivar* standard.

If the association of district judges were to review the Court's opinion, it would not come as a great surprise were the association to rule the opinion fallacious and without foundation. Such an action would especially be expected from the association with regard to the majority's failure to consider that plaintiffs' counsel had no reason to suspect that the plaintiffs were mistaken or negligent in their belief and understanding that their neighbor, Christensen, was the owner of the property on which she was resident and on which property she had resided for some time. In fact, because the partnership agreement had not been filed with the secretary of state prior to the filing of the complaint, an extremely diligent inquiry would have yielded the same result. Clearly, it was a case of apparent ownership, and Christensen was a proper party defendant inasmuch as she continued to have an ownership interest in the property, notwithstanding the placing of title in an entity created for the sole purpose of holding title. Most, if not all attorneys should find it inconceivable that an attorney henceforth is not entitled to obtain the facts from his client as against the hiring of a private investigatory, on pain of being assessed a judicial fine under the provisions of Rule 11.

Finally, and needless to say, there is no enchantment to behold in the Court's assessment of attorney fees on appeal against plaintiffs' attorney for appealing solely to challenge the award of attorneys fees under Rule 65(c). Only by sustaining that award of fees in the trial court is the majority able to enter this additional, but unjustified sanction. For all of the reasons above, I respectfully dissent.

*Durrant v. Christensen,* 117 Idaho at 75, 785 P.2d at 639 (emphasis in original).